**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Anant Kumar Tripati,

          Plaintiff,

v.

Corizon Incorporated, et al.,

          Defendants.

No.  CV 16-00282-TUC-DCB

**ORDER**

On January 26, 2016, Plaintiff Anant Kumar Tripati, who is now confined in the Arizona State Prison Complex, East Unit, in Florence, Arizona, filed a *pro se* civil rights Complaint under 42 U.S.C. § 1983 in the District Court for the Middle District of Tennessee.  Plaintiff sued Corizon Inc. ("Corizon"), a private corporation that has contracted with the Arizona Department of Corrections (ADC) to provide healthcare to ADC inmates; officers or general counsel for Corizon and Corizon staff who work or worked at ADC facilities; and numerous ADC employees, including the ADC Director, Charles L. Ryan.  Plaintiff filed a motion for leave to amend his Complaint with a proposed first amended complaint (Doc. 15-1) and later paid the $400 filing and administrative fees (Doc. 21).[1]  The Tennessee court transferred the case to this District

---

[1]  Plaintiff has had at least three prior prisoner actions dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted.  *See Tripati v. Schriro,* No. CV 97-0021-PHX-ROS (D. Ariz. May 22, 1997) (dismissed for failure to state a claim); *Tripati v. Felix,* No. CV 05-0762-PHX-DGC (D. Ariz. Oct. 14, 2005) (same); and *Tripati v. Thompson,* No. CV 03-1122-PHX-DGC (D. Ariz. Dec. 28, 2005) (same); *see also Tripati v. Schriro,* 541 U.S. 1039 (2004) ("As petitioner has repeatedly abused this Court's process, the Clerk is directed not to accept

as the proper venue.  After the case was transferred, Plaintiff filed a motion for extension of time to complete the court-approved form complaint for use by prisoners (Doc. 25) and a notice of filing a second amended complaint (Doc. 26) with a Second Amended Complaint (Doc. 27).  The Court denied Plaintiff's motion to amend (Doc. 15), granted Plaintiff leave to file his Second Amended Complaint, and gave Plaintiff 30 days to file a certificate certifying his signature on the certificate constituted his signature on the Second Amended Complaint (Doc. 29).  Plaintiff filed a signature certificate (Doc. 31). Plaintiff subsequently filed a motion to amend or correct the Second Amended Complaint (Doc. 36) with a proposed Third Amended Complaint (TAC) (Doc. 36-1).

On March 7, 2017, the Court granted Plaintiff's motion to amend and ordered the lodged TAC filed.  The Court screened the TAC and dismissed it for failure to state a claim with leave to amend to attempt to cure its deficiencies (Doc. 43).  Shortly before that Order was filed, Plaintiff filed a document captioned as "Notice of Filing a Typed Complaint" (Doc. 40), which the Clerk of Court filed as a motion for leave to amend the TAC and lodged the "Typed Complaint" as a proposed "Fourth Amended Complaint" (Doc. 41).  The Court granted Plaintiff 30 days in which to file any revised fourth amended complaint in compliance with the March 7, 2017 Order (Doc. 44).  The Court stated that if Plaintiff failed to file a revised fourth amended complaint, the Court would grant Plaintiff's motion for leave to file his typed complaint (Docs. 40 and 41).  Several days later, Plaintiff filed a revised Fourth Amended Complaint (Doc. 45).  On September 19, 2017, the Court denied Plaintiff's motion for leave to file the typed complaint as moot.[2]  (Doc. 56.)

---

any further petitions in noncriminal matters from petitioner unless the docketing fee required by Rule 38(a) is paid and petition submitted in compliance with Rule 33.1.").

In *Tripati v. Corizon*, No. CV 13-0615-TUC-DCB, this Court dismissed the case, finding Tripati had committed a fraud upon the Court and entered Judgment accordingly. (Docs. 245, 246.)

[2]  Although not identical to the typed complaint, Plaintiff's Fourth Amended Complaint largely mirrored the lodged typed complaint submitted with Plaintiff's motion for leave to file a typed complaint.

On September 25, 2017, Plaintiff filed a motion for leave to file a *fifth* amended complaint (Doc. 57), and lodged a proposed Fifth Amended Complaint (Doc. 59), and he filed an ex parte motion for a temporary restraining order (Doc. 58); an Appendix in support of his request for injunctive relief (Doc. 60); a notice of errata concerning his proposed Fifth Amended Complaint (Doc. 61); and a supplement to his motion for injunctive relief (Doc. 62). On January 12, 2018, Plaintiff filed a Motion to Stay and Abate Time because he has recently received documents "which may be relevant to issues in this case." (Doc. 63).

The Court will deny Plaintiff's motion for leave to amend and his motion for injunctive relief, which seeks relief on claims presented for the first time in his proposed Fifth Amended Complaint. The Court will deny Plaintiff's motion to stay because the documents Plaintiff references relate to a claim previously dismissed; in this action, the Court dismissed Plaintiff's claim for injunctive relief based on alleged violations of stipulations approved by the court in *Parsons v. Ryan,* CV 12-601-PHX-DKD, a class action concerning medical care provided to prisoners in ADC custody ADC.[3] *See* (Order (Doc. 56) at 3) (finding decree in *Parsons* does not provide basis for relief). **T**he Court will dismiss the Fourth Amended Complaint for failure to state a claim and this action.

---

[3] While the Court denies the Motion to Stay because the subject matter of the public records release appears related to the *Parsons* claim,[3] the Court also in part denies the stay because the Plaintiff appears to believe that Rule 15 is an ongoing mechanism by which he may cobble new claims into this case. It is permissible to join claims against already named Defendants that are factually unrelated, Fed. R. Civ. P. 18, but there is always a concern in prisoner cases that a prisoner's amendment is an attempt to side-step filing fee requirements under the Prison Litigation Reform Act (PLRA). *George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007), *cf., Planned Parenthood of Southern Arizona v. Neely,* 130 F.3d 400, 402 (explaining supplemental pleading is favored to bring an action "up to date" and to set forth new facts affecting the controversy that may have occurred since the original pleading was filed, but will be denied if used to introduce a separate, distinct and new cause of action). Supplemental pleadings in prisoner cases raise the same concern as joining unrelated claims because it may result in avoidance of a filing fee or circumvention of the PLRA's three strikes rule. *Paul Adams v. California Corr. Inst.,* No. CV 16-1678-AB, 2016 WL 6464444 *6 (C.D. Cal. November 1, 2016). To the extent the Plaintiff seeks a stay to abate the time to file a Fifth Amended Complaint to allow him time to investigate unrelated claims, it is denied.

Plaintiff's other motions will be denied.

**I.      Motion for Leave to Amend**

Plaintiff commenced this action in January 2016, and it has not yet been served on any Defendant.  Fed. R. Civil Procedure 4(m) requires a complaint be served within 90 days.  The Court has freely granted him leave to amend, pursuant to Fed. R. Civ. P. 15(a)(2), but now denies him leave to file the Fifth Amended Complaint because the repeated amendments have precluded timely service, and because the proposed Fifth Amended Complaint largely fails to comply with this Court's Local Rules of Civil Procedure or with the Instructions for a prisoner complaint.

A complaint having the factual elements of a cause of action scattered throughout the complaint and not organized into a "short and plain statement of the claim" may be dismissed for failure to satisfy Rule 8(a) of the Federal Rules of Civil Procedure.  *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988); *see also McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996).  In addition, Local Rule 3.4 of the Local Rules of Civil Procedure requires incarcerated persons to use court-approved form complaints. The form complaint must be signed and legibly written and completed in accordance with the instructions provided.

The Instructions for completing the court-approved complaint form for use by prisoners provides in relevant part that: "If needed, you may attach additional pages, but no more than fifteen additional pages, of standard letter-sized paper.  You must identify which part of the complaint is being continued and number all pages.  If you do not fill out the form properly, you will be asked to submit additional or corrected information, which may delay the processing of your action.   You do not need to cite law." (Instructions at 1) (Italics added for emphasis).

The Instructions further provide that:

1.  Counts.  You must identify which civil right was violated.  ***You may allege the violation of only one civil right per count.***
2. Issue Involved.  Check the box that most closely identifies the issue involved in your claim.  ***You may check only one box per count***.  If you

check the box marked "Other," you must identify the specific issue involved.

3. Supporting Facts.  After you have identified which civil right was violated, *you must state the supporting facts.  Be as specific as possible. You must state what each individual defendant did to violate your rights.  If there is more than one defendant, you must identify which defendant did what act.  You also should state the date(s) on which the act(s) occurred, if possible.*

4. Injury.  State precisely how you were injured by the alleged violation of your rights.

(Instructions, part C) (italics and underlining added for emphasis).

Plaintiff did not use the court-approved form complaint for use by prisoners for his proposed Fifth Amended Complaint.  Although typed, his proposed Fifth Amended Complaint fails to substantially comply with the requirements of that form and the Instructions for completing the form complaint.  Plaintiff also alleges multiple claims in each count and he fails to allege supporting facts showing what each individual defendant did to violate his rights.  Further, although it ostensibly complies with the page limits for a prisoner complaint, Plaintiff's proposed Fifth Amended Complaint is single-spaced, contains more than twice the 28 lines per page allowed, is in either a fixed-pitch type size smaller than ten pitch or a proportional font size less than 13 point, and the left margin is approximately ¼ to ½ inch.  *Compare* Local Rule 7.1(b)(1) (requiring all documents to be typed double-spaced, not to exceed 28 lines per page and pages numbered, left margin not less than 1½ inches and the right margin shall not be less than ½ inch, with all pleadings, motions and other original documents to be in a fixed-pitch type size no smaller than ten (10) pitch (10 letters per inch) or in a proportional font size no smaller than 13 point).

Some of the deficiencies of the proposed Fifth Amended Complaint are shared by the Fourth Amended Complaint.  However, the Fourth Amended Complaint is modestly easier to follow and less convoluted and rambling than the proposed Fifth Amended Complaint.  Plaintiff appears to primarily seek leave to amend to shoe-horn new wholly

unrelated claims to those asserted thus far in this case.  Under these circumstances, the Court will deny Plaintiff's motion for leave to amend and instead will screen the Fourth Amended Complaint.  Because Plaintiff's ex parte application for a temporary restraining order seeks relief unrelated to his allegations in the Fourth Amended Complaint, the Court will deny that motion as well.  *See Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997) (an injunction should not issue if it "is not of the same character, and deals with a matter lying wholly outside the issues in the suit").

## II.    Plaintiff's Remaining Pending Notices and Motions

Plaintiff has filed a notice of retaliatory action (Doc. 53).  In this document, Plaintiff states that he made a public records request for documents submitted by Corizon, Wexford, or Trinity with their bids for contracts with ADC, and reports concerning compliance in *Parsons v. Ryan*, No. CV 12-00601-PHX-DKD, a class action concerning medical care provided to ADC prisoners.  Plaintiff asserts that as a consequence of seeking this information, he has suffered retaliation in the form of disciplinary charges and interruption in the delivery of mail.  Plaintiff does not describe any particular incident and merely makes vague and conclusory assertions.  To the extent that Plaintiff intended to seek any relief in this notice, it will be denied.

As described above, Plaintiff's Fourth Amended Complaint is pending before this Court for screening, but Plaintiff has filed a motion for leave to file a compact disc and for leave to file a supplemental complaint (Doc. 50) with a proposed supplemental complaint (Doc. 51).  Rule 15(d) of the Federal Rules of Civil Procedure provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  As described above, Local Rule 7.1(b)(1) imposes additional requirements for filings.

On the disc submitted by Plaintiff are 20 single-spaced pages of allegations, most of which do not concern events that have occurred since the filing date of the pleading to be supplemented, i.e., Plaintiff's March 15, 2017 Fourth Amended Complaint (Doc. 45).

Thus, Plaintiff's purported supplemental complaint fails to substantially comply with Rule 15(d). It also fails to substantially comply with Local Rule 7.1(b). The proposed supplemental complaint is single-spaced, contains well over 28 lines per page, and is not in a fixed pitch type size no smaller than 10 or in a proportional font size no smaller than 13 point. Indeed, when converted to a proportional font size of 13, the supplemental complaint is more than 60 pages long. For these reasons, Plaintiff's motion for leave to file a supplemental complaint will be denied.

Although Plaintiff's motion for leave to file a supplemental complaint will be denied, the Court does consider exhibits to that motion that appear relevant to allegations in the Fourth Amended Complaint and/or events that have occurred since the filing of the Fourth Amended Complaint. Similarly, the Court does consider exhibits to certain of Plaintiff's other notices to the extent relevant to his claims and to the extent they clarify Plaintiff's allegations. The Court, accordingly, considers the attachments relied on herein as supplemental documents to the Fourth Amended Complaint. *See United States v. Ritchie*, 342 F .3d 903, 908 (9th Cir.2003) (court may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters that can be judicially noticed under Fed.R.Evid. 201).

## III. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## IV.    Fourth Amended Complaint

In his seven-count Fourth Amended Complaint,[4] Plaintiff asserts claims for denial of constitutionally adequate medical care (Count I), exposure to environmental tobacco smoke (ETS) (Count II), violation of his religious exercise rights (Count III), retaliation (Count IV), fraud on the court (Count V), spoliation (Count VI), and violation of equal protection (Count VII). In several counts, Plaintiff includes allegations that are more properly considered in conjunction with a different count, e.g., allegations of retaliation included in Count I are more properly considered in conjunction with Count IV. The Court considers allegations together, i.e. retaliation allegations are considered together.

---

[4] Plaintiff labels his request for declaratory relief as Count VIII, but does not allege a separate claim for relief in Count VIII.

Plaintiff sues Corizon, Inc. ("Corizon"), and the following Corizon officers as policymakers for Corizon: Drs. Calvin Johnson, Woodrow Myers, and Harold Orr; B. Anderson Flatt; Tracy Nolan; Jonathan Walker[5]; Karey Witty; and Scott Bowers. Plaintiff also sues Dr. Winfred Williams, whom Plaintiff identifies as the Corizon Regional Director. Further, Plaintiff sues Beecken, Petty, O'Keefe & Company (BPOC), a Chicago-based private equity management firm "founded in 1996 to invest in middle-market buy-out transactions, recapitalizations, and growth platforms exclusively in the healthcare industry,"[6] as an alleged policymaker for Corizon.

Plaintiff sues the following current or former Corizon employees who are or were employed at ADC complexes: Drs. Lucy Burciaga (Tucson Complex), Dr. Christopher Johnson (East Unit in the Florence Complex); Nurse Practitioners (NPs) Christina Armenta (Tucson Complex) and Joanna Grafton (East Unit); Registered Nurses (RNs) Angela Martinez, Tamara Porter, Lisa Lyons, and Marlene Bedoya all at the Tucson Complex.

In addition, Plaintiff sues the following current or former ADC employees: Director Charles Ryan; legal monitors Julia Erwin and Daryl Johnson; Appeals Officers Julliette Respicio-Moriarty, Heather Richardson, Cheryl Dossett, and Elizabeth Valencia; ADC Medical Manager Dr. David Robertson (Phoenix); Classification Officer Stacy Crabtree; Florence Complex Deputy Warden (DW) Annemarie Smith-Whitson; Tucson Complex DWs Glen Pacheco,[7] Panaan Days, and Anna Jacobs; Corrections Officer (CO) IV Debra Han (Tucson); paralegal Betty Ulibarri; and Regional Director Timothy Lawrence. Finally, Plaintiff also sues Arizona Attorney General Mark Brnovich,[8] and

---

[5] Plaintiff repeatedly refers to Walker as "Waker." The Court refers to this Defendant as "Walker." *See e.g.*, Doc. 45 at ¶¶ 101, 107.

[6] *See* http://bpoc.com (last visited Nov. 3, 2017).

[7] Plaintiff repeatedly refers to Pacheco as "Pachecho." The Court refers to this Defendant as "Pacheco." *See e.g.*, Doc. 45 at ¶¶ 37, 51, 57, 72.

[8] Brnovich was inaugurated as Arizona's Attorney General in 2015. *See* https://www.azag.gov/profile/mark-brnovich (last visited Nov. 3, 2017).

current or former Assistant Arizona Attorneys General Susan Rogers, Karyn Klausner,[9] Kelley J. Morrissey, and Paul Edward Carter. Plaintiff describes virtually all of the Defendants as policymakers or "special policymakers" for Corizon, ADC, or the Arizona Attorney General's Office. (Doc. 45 ¶ 41.) Plaintiff seeks declaratory, injunctive, and compensatory relief.

## V. Failure to State a Claim

Plaintiff alleges claims under 42 U.S.C. § 1983 in Counts I through VII. To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). Further, a "'plaintiff generally must assert his own legal rights and interests, and cannot assert the legal rights or interests of third parties.'" *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 610 (9th Cir. 2005) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).[10]

To state a claim against a defendant, "[a] plaintiff must allege facts, not simply conclusions [to] show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). For an

---

[9] According to information available online from the State Bar of Arizona, Ms. Rogers and Ms. Klausner no longer practice in this state. Plaintiff has previously named them, Mr. Carter, and Ms. Morrissey, as defendants in cases filed by him. *See Tripati v. Brewer*, CV10-00429-TUC-AWT (Rogers, Klausner, Morrissey, Carter), *Tripati v. Johnson*, CV11-00195-TUC-AWT (Rogers, Klausner), *Tripati v. Frame*, CV14-00026-TUC-DCB (Rogers, Klausner); *Tripati v. Carter*, CV14-02077-TUC-DCB (Rogers, Carter). *Tripati v. Thompson*, CV03-01122-PHX-DGC (Morrissey). These cases are closed.

[10] For this reason, the Court does not consider Plaintiff's references to other prisoners or cases not involving Plaintiff, such as law suits filed by other inmates against one or more of the Defendants.

individual to be liable in his or her official capacity, a plaintiff must allege injuries resulting from a policy, practice, or custom of the agency over which that individual has final policy-making authority. *See Cortez v. County of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2002). In addition, there is no respondeat superior liability under § 1983, so a defendant's position as the supervisor of someone who allegedly violated a plaintiff's constitutional rights, absent more, does not make him liable. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor in his personal capacity "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045. Further, under Ninth Circuit law, a defendant can be liable for failure to act. *Id.* Generally, whether a defendant's denial of administrative grievances is sufficient to state a claim depends on several facts, including whether the alleged constitutional violation was ongoing, *see e.g.*, *Flanory v. Bonn*, 604 F.3d 249, 256 (6th Cir. 2010), and whether the defendant who responded to the grievance had authority to take action to remedy the alleged violation, *see Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009).

### A. Policymaker Allegations

Plaintiff alleges that virtually every Defendant is a "policymaker" or a "special policymaker."[11] However, Plaintiff generally fails to allege facts to support that any Defendant, other than officers or directors of Corizon, Director Ryan for ADC, and Arizona Attorney General Brnovich for the Arizona Attorney General's Office, had "final policymaking authority" over Corizon, ADC, or the Arizona Attorney General's Office, respectively. Plaintiff fails to allege facts to support that any other Defendant promulgated policies as a final policymaker that resulted in claimed injuries; he makes only vague and conclusory assertions. Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will

---

[11] Allegations that any Defendant is a "special policymaker" are therefore treated as asserting that the Defendant is the final policymaker for the relevant entity.

not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pleaded. *Id*. Therefore, with the exception of Defendant officers or directors for Corizon, Ryan as Director of ADC, and Arizona Attorney General Brnovich, Plaintiff's policymaker allegations will be dismissed and are not discussed further herein.

**B.** **Count I**

Plaintiff designates Count I as a claim for the denial of constitutionally adequate medical care. Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*,

220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

The Court considers Plaintiff's allegations in two parts: 1) Plaintiff's claim that he was allegedly denied a medical diet to address claimed allergies and 2) non-diet issues regarding allegations that medication is improperly dispensed in the East Unit, Defendants delay access to specialists, and retaliatory conduct.

### 1. Medical Diet

When the Court screened the TAC, it found that Plaintiff appeared to be attempting to re-litigate claims raised in CV 11-00195 TUC AWT:

> Plaintiff has not alleged *facts* to support the existence of a change in circumstances since summary judgment was granted for the defendants in his previous case. Instead, Plaintiff appears to be attempting to re-litigate claims and issues resolved against him in his prior case. Further, Plaintiff does not plausibly allege that he suffers from symptoms as a result of the diet he receives and eats. Plaintiff's attempts to explain why the RAST test was invalid could and should have been raised in Plaintiff's prior case or on appeal from summary judgment in that case. While this Court does not discount the possibility that despite the result of the previous RAST test, Plaintiff may suffer from some condition that is aggravated by the vegetarian diet provided by ADC, Plaintiff simply fails to plausibly allege facts to support that has occurred or plausible facts to support that any Defendant has acted with deliberate indifference to such condition, including specifically when, who, and how.

> Plaintiff's allegations in this portion of Count I are vague, confusing, and lack specificity. Plaintiff fails to allege facts to differentiate his contentions in this case from those that were decided against him in his

previous case. For both reasons, Plaintiff fails to state a claim in this portion of Count I and it will be dismissed.

(Order (Doc. 43) at 14-15.) This remains true. The Fourth Amended Complaint has not cured the deficiencies found in the TAC.

Beginning with *Tripati v. Johnson*, No. CV 11-00195-TUC-AWT, Plaintiff alleged that he was allergic to numerous foods included in ADC's vegetarian diet, which Plaintiff received as a religious dietary accommodation his Hindu religion. *Tripati*, No. CV 11-00195 TUC-AWT, Doc. 18 at 5. Plaintiff alleged that he was forced to choose between a vegetarian diet that accorded with his religious beliefs or a medical diet that did not contain items to which Plaintiff claimed to be allergic, but which included meat. *Id.*

In CV 11-00195 TUC-AWT, Judge Tashima granted the defendants summary judgment. Judge Tashima explained that:

> Defendants have carried their initial burden of showing that there is no genuine issue of material fact as to Tripati's Eighth Amendment and RLUIPA claims. Tripati's deliberate indifference argument rests on Defendants' refusal to provide Tripati with a diet that accommodated his allergies. When Tripati requested a special allergy diet, Defendants had no record that Tripati had ever been tested for food allergies. DSOF ¶ 35. ADC uses the RAST blood test as an initial screening to determine an inmate's food allergies. DSOF ¶ 32. FHA Greeley told Tripati that ADC would accommodate his allergies once they were confirmed through the RAST test. *Id.* Tripati refused to take the RAST test. DSOF ¶ 41. Defendants then discontinued Tripati's allergy diet and instead issued him a religion-based, vegetarian diet. DSOF ¶ 41. These facts indicate that there is no triable issue as to Tripati's allegation that Defendants were deliberately indifferent to Tripati's alleged food allergies.–*See McGuckin*, 974 F.2d at 1060 ("A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."); *Miller v. Sloan*, 2005 WL 3262978, at *3 (D. Ariz. 2005) (granting summary judgment in favor of prison officials where officials denied inmate a special allergy diet and inmate's allergy test results returned negative).

*Id.* at 5 (footnotes omitted).

Judge Tashima specifically noted that on January 27, 2014, the defendants had provided the Court with a report reflecting that they had performed RAST allergy testing on Plaintiff and found no evidence of his alleged food allergies. *Id.* n.4. He concluded this negative test result further confirmed the Court's decision, *id.,* that "Tripati presents no evidence that Defendants knew of and consciously disregarded an excessive risk to Tripati's health. Tripati instead argues that the RAST test is unreliable and has been replaced by the allergy testing procedure set forth at www.niaid.nih.gov/topics/foodallergy/clinical. PSOF at 2-3; PSOF Ex. G; Pl.'s Reply (Doc. 172) at 1-4. Tripati's evidence shows no more than a difference in medical opinion as to the reliability and necessity of using the RAST test. But a difference in medical opinion does not amount to deliberate indifference." *Id.* at 6-7 (citations omitted). Finding that Tripati failed to create a triable issue of fact regarding deliberate indifference, Judge Tashima held that the RLUIPA claim failed too because it centered on his alleged need for an allergy diet; it was undisputed that he was receiving a vegetarian diet which accommodated his religion. *Id.*

In the Fourth Amended Complaint, Plaintiff *has* alleged intervening events since the entry of summary judgment in CV 11-00195 TUC-AWT, and he claims that defendants in CV 11-00195 TUC-AWT concealed or falsified evidence in that case and perpetrated a fraud on the court, which he raises as an independent claim in Count V, as a work-around to the res judicata bar noted by the Court when it screened the TAC. Plaintiff's allegations in the Fourth Amended Complaint are mostly vague and conclusory, but copies of the supplemental documents submitted by Plaintiff both clarify his allegations concerning his medical diet claim and support his assertion of changed circumstances since summary judgment was granted in CV 11-00195 TUC-AWT.

The Plaintiff is now receiving a medical diet, responsive to his alleged allergies. On August 28, 2014, Corizon Medical Director Sylvia McQueen issued a Restricted Diet Order (RDO) for Plaintiff, specifically, an allergy diet excluding dairy, wheat, soy, nuts, or beans with a start date of September 2, 2014. (Doc. 50 at 11.)

The RDO forms contained a section to be completed by medical staff to authorize a medical diet and a section to be completed by prison staff, presumably religious staff, to authorize a religious diet.  (Docs. 50 at 11, 48 at 4.)  Each RDO form also contained a "NOTICE TO INMATE," which stated that medical diets take precedence over religious diets.  (*Id.*)  The medical diet sections of both RDO forms were signed by Corizon medical staff, i.e., McQueen and Daye.  (*Id.*)  Hand-written notations on each RDO stated that RAST testing was not required, but it is unclear who made the notations, i.e., McQueen, Daye, or possibly Plaintiff.  (*Id.*)  *Neither* of the religious diet sections of the RDOs was signed by prison staff or anyone else, notwithstanding hand-written notations stating "Hindu" and "Vegan Diet only."  (*Id.*)  In short, the RDOs do not reflect that Plaintiff was approved to receive a religious diet, but only that he was approved to receive a medical diet.  *See also,* (Doc. 50 at 10 (denying Plaintiff's request for a Hindu/Vegan diet because it was a religious diet that was under the purview of the chaplain)

The supplemental documents reflect that since August 28, 2014, Plaintiff has been issued a Restricted Diet Order (RDO) for an allergy diet excluding dairy, wheat, soy, nuts, or beans.  (Doc. 50 at 11); *see also* RDOs ( September 12, 2014, NP Catalina Daye issued an RDO, which provided that Plaintiff be given a diet with a start date of September 12, 2014 that did not contain dairy, wheat, or peanuts.  (Doc. 48 at 4.); July 8, 2016 RDO, NP Grafton ordered an allergy diet, excluding corn, wheat, milk, peanuts or tree nuts, soy, and egg, for Plaintiff.  (Doc. 49 at 6.); Plaintiff apparently received an allergy diet between July 8, 2016 and May 23, 2017, because in a May 23, 2017 response to Plaintiff's Medical Grievance Appeal of June 30, 2017, C. Ngmube issued an RDO to Plaintiff for an allergy diet, excluding beans, soy, dairy, wheat, and peanuts and with an expiration date of June 26, 2018.  (Doc. 50 at 14.)[12]

Plaintiff has acknowledged that he is receiving an allergy diet without soy, wheat,

---

[12] The time period between May 23 and June 30 may be the subject of Plaintiff's allegations that he was denied a corrected dietary card, i.e., DRO for the medical diet.

dairy, beans, or nuts.  (*Id.* at 1.)  Further, Plaintiff states that since May 2017, he has received a *vegetarian* allergy diet and that an unnamed person has told him that he will receive that diet, i.e., a *vegetarian* allergy diet, until "such time [that] Central Office directs East Unit not to give the diet" since "they have all the raw materials[.]"  (*Id* at 2-3.)  Plaintiff states that since he began receiving the diet, his blood sugar does not fluctuate and he does not feel weak.  (*Id.*)  He claims that this shows that "Defendants" have the ability and materials to give him "the diet as ordered August 28, 2014[.]"  (*Id.*)

As an initial matter, the August 28, 2014 RDO did not authorize Plaintiff to receive a *vegetarian* allergy diet.  Instead, Dr. McQueen ordered an allergy diet for Plaintiff, but she did *not* prescribe that Plaintiff receive a vegetarian allergy diet for medical reasons.  As described above, no medical or prison official authorized a vegetarian allergy diet.[13]  Similarly, the September 12, 2014, RDO did not exclude meat as an ingredient from Plaintiff's allergy diet.

The documents submitted by Plaintiff reflect that RDOs have been issued since August 28, 2014, that provide for an allergy diet.  The Court understands the gist of Plaintiff's medical diet claim to be that he has been denied a *vegetarian* allergy diet, which would accommodate both his medical issues and his religion.

In dismissing the medical diet claim in the TAC, the Court noted in part that Plaintiff had failed to allege sufficient facts to support that he required a medical diet; failed to adequately describe his symptoms; failed to allege that he had been diagnosed with any medical condition that required a *vegetarian* allergy diet, as opposed to ADC's standard allergy diet; failed to make clear the particular diet to which he referred; and failed to allege how any of the acts or omissions of the cited Defendants rose to a level of deliberate indifference.  These pleading deficiencies remain in his Fourth Amended

---

[13]  Plaintiff elliptically acknowledges as much in his Fourth Amended Complaint by stating that McQueen (identified as Corizon's Chief Clinical Officer) issued a diet order and stated that the diet "may be" meatless.  (Doc. 45 at 5 ¶ A.)  That is, Plaintiff's allegations do not support that McQueen ordered a *vegetarian* allergy diet for medical reasons, merely that she had no medical objection to Plaintiff receiving an allergy diet that was vegetarian.

Complaint.

In addition to asserting the denial of a medical diet in Count I, Plaintiff also alludes to having been denied a corrected diet card or order, which was allegedly approved by various Defendants. *See* Fourth Amended Complaint (Doc. 45) ¶¶ 11-17.) As discussed above, it appears that Plaintiff is and has been receiving a medical allergy diet for some time. To the extent that he asserts that he was denied a diet order or card, Plaintiff's allegations are vague, conclusory, and confusing. Plaintiff fails to allege when these events occurred or to indicate the diet card to which he refers. Although pro se pleadings are liberally construed, *Haines*, 404 U.S. at 520-21, conclusory and vague allegations will not support a cause of action. *Ivey*, 673 F.2d at 268. Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pleaded. *Id*. These allegations will be dismissed.

For the reasons discussed, the Court will dismiss the portion of Count I alleging that Plaintiff has been denied a *medical* diet and medical diet card for failing to state a claim.

## 2. Medication, Specialists, and Retaliation

In Count I, Plaintiff also alleges that medications are not being appropriately dispensed and that there have been delays in being seen by a urologist or other specialists, which Plaintiff alleges has aggravated his condition.[14] Except as otherwise indicated, Plaintiff alleges that prior to April 2016, when Plaintiff was transferred to the East Unit, Plaintiff was held in an inpatient unit that apparently had medical staff 24 hours a day and certain medications were dispensed every eight hours while Plaintiff was in that inpatient unit.[15] (Doc. 49 at 5.) In the East Unit, however, medical staff is only available about nine hours a day. As a result, Plaintiff's medications for a full day are dispensed over the

---

[14] Plaintiff also asserts claims for retaliation and/or denial of access to the courts, which are addressed in connection with Count IV.

[15] Documents submitted by Plaintiff reflect that he was prescribed several medications, but that only Gabapentin and Senna were to be taken three times a day. (Doc. 49 at 5.)

course of the nine hours that the unit is medically staffed.  Plaintiff asserts that taking three doses of Gabapentin over the course of nine hours makes him high part of the day and without benefit of the Gabapentin during other portions of the day.  Plaintiff alleges that for that reason, he has refused his medications because the medications, presumably referring to Gabapentin, are not effective to treat his medical condition(s) as dispensed in the East Unit.

Plaintiff has submitted a copy of an Inmate Letter dated April 20, 2017, in which he stated that on August 28, 2014, Dr. McQueen approved the following medications: Zyrtec, Prednisone, Flonase, Clopidogrel,[16] Omeprazole,[17] Senna (two tablets three times a day), Amlodipine,[18] Gabapentin (900 mg. every eight hours),[19] and Finasteride and Doxazosin.[20]  (*Id.*)  In the same Inmate Letter, Plaintiff reported falling several times a week, having blood pressure and blood sugar problems, difficulties urinating, constipation, allergy issues, shakes or tremors, memory loss, and pain.  (*Id.*)  Plaintiff also stated that NP Grafton had "refused to provide [Plaintiff] with the care [he] got until [April 21, 2016]," i.e., when he was transferred to the East Unit.  (*Id.*)  Thus, it appears that in Count I, Plaintiff alleges that Gabapentin, and possibly Senna, are not dispensed every eight hours.

As this Court noted when it screened the TAC, the Plaintiff does not allege that any medical professional has prescribed that any of his medications, including Gabapentin, be dispensed every eight hours.  Plaintiff's disagreement with when and how

---

[16]  The generic form of Plavix commonly prescribed to prevent or treat problems with the heart and blood vessels.  *See* https://medlineplus.gov/drug info/meds/a601040.html (last visited Nov. 2, 2017).

[17]  The generic form of Prilosec commonly prescribed to treat gastroesophageal reflux disease, heartburn, or ulcers.  *See* https://medline plus.gov/ency/patient instructions/000381.htm (last visited Nov. 2, 2017).

[18]  Commonly prescribed to treat high blood pressure.  *See* https://medlineplus.gov/druginfo/meds/a692044.html (last visited Sept. 15, 2017).

[19]  Commonly prescribed to treat certain types of seizures, post-herpetic neuralgia and associated pain, and restless legs syndrome.  Gabapentin should be taken at evenly spaced intervals and it may cause drowsiness, dizziness, slow thinking, and/or the loss of coordination.  *See* https://medlineplus.gov/druginfo/meds/a694007.html (last visited Nov. 2, 2017).

[20]  Commonly prescribed to treat prostate problems.  *See* https://medlineplus.gov/ druginfo/meds/a698016.html (last visited Nov. 2, 2017).

medications are dispensed, absent more, is not sufficient to support that any Defendant has acted with deliberate indifference to his serious medical needs.  Plaintiff's decision not to take prescribed medication, similarly, does not support that any Defendant has acted with deliberate indifference to any serious medical need.   This deficiency remains in Plaintiff's Fourth Amended Complaint and the supplemental documents provide no evidence to suggest the Plaintiff can correct it.

To the extent that Plaintiff complains of delays in being seen by a specialist, Plaintiff's allegations are vague and conclusory.  He does not identify the condition(s) or their severity, when the condition(s) or symptoms appeared, or when and how he sought treatment for the condition or symptoms and responses to his requests.  He also fails to allege facts to support that any Defendant delayed seeking an evaluation despite knowing or having a reason to know that doing so posed an excessive risk to Plaintiff.   More generally, Plaintiff fails to allege facts to support that any Defendant has acted with deliberate indifference to any alleged serious medical need.  Accordingly, Plaintiff fails to state a medical claim in this portion of Count I and it will be dismissed.

### C.    Count II: Conditions of Confinement

Plaintiff designates Count II as an Eighth Amendment claim based on exposure to environmental tobacco smoke (ETS).   Plaintiff's ETS exposure claim is treated as a conditions-of-confinement claim.  *See Helling v. McKinney*, 509 U.S. 25 (1993).

To state a claim for unconstitutional conditions, a plaintiff must allege an objectively "sufficiently serious" deprivation that results in the denial of "the minimal civilized measure of life's necessities."  *Farmer*, 511 U.S. at 834; *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994); *see Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049-50 (9th Cir. 2002).  That is, a plaintiff must allege facts supporting that he is incarcerated under conditions posing a substantial risk of harm.  *Farmer*, 511 U.S. at 834.  "The circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a constitutional violation has occurred."  *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.

2000)). Further, whether a condition of confinement rises to the level of a constitutional violation may depend, in part, on the duration of an inmate's exposure to that condition. *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978)).

A plaintiff must also allege facts to support that a defendant acted with deliberate indifference. Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. To state a claim of deliberate indifference, a plaintiff must meet a two-part test. First, the alleged constitutional deprivation must be, objectively, "sufficiently serious"; the official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Id.* at 834 (citations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with deliberate indifference to inmate health or safety. *Id.* (citations omitted). In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837 (emphasis added).

Plaintiff alleges that unidentified ADC employees responsible for enforcing ETS policies have stated that ADC's ETS policy is ineffective and unenforceable. According to Plaintiff, many ADC employees are being sickened by ETS. (Doc. 45 ¶ 43.) Plaintiff has trouble breathing due to ETS. (*Id.* ¶ 44.) Ryan, presumably through policies, wants Plaintiff to provide names of those who smoke in prohibited areas, which if complied with would put Plaintiff in danger of assault by other inmates. (*Id.* ¶ 45.) Placing inmates who complain about ETS into protective custody does not alleviate the risk because the ADC protective custody system does not work; inmates are moved from yard to yard, but continue to get beaten up—presumably because they identified other inmates who complained about violation of the ETS regulation. Further, ETS is also a problem on protective custody (PC) yards. (*Id.* ¶ 46.) Plaintiff asserts that Dossett and Richardson have "apparent authority" to give Plaintiff relief by creating no-smoking

units, but they refuse to do so because Ryan does not want to lose revenue from tobacco sales. (*Id.* ¶ 47.) Plaintiff asserts that Attorney General Brnovich has caused the threat to his safety by refusing to direct Ryan to make policy changes. (*Id.* ¶ 48.) Plaintiff alleges that as a result, he is subjected to ETS and suffers breathing problems, but "defendants" have acted with deliberate indifference to Plaintiff's medical condition by failing to change ADC policies and protect him from ETS. (*Id.* ¶ 49.)

Contrary to Plaintiff's allegations, Defendants have through Department Order (DO) 109 expressly bans smoking by inmates, employees, and others in enclosed areas and buildings and within twenty feet of any building entrances, among other areas.[21] As Plaintiff implies, tobacco products are available for purchase from the prison commissary depending upon an inmate's classification.[22]

As noted by this Court when it screened the TAC, ETS may pose a risk to health, but Plaintiff fails to allege the extent to which he has been or is being exposed to ETS in designated non-smoking areas. Plaintiff does not allege that he has been diagnosed with a medical condition that is aggravated by exposure to ETS or facts to support that such exposure poses an excessive risk to his health. Assuming that the extent of Plaintiff's exposure to ETS does pose an excessive risk to Plaintiff's health, Plaintiff has not alleged facts to support that despite knowing such facts, Ryan has failed to alleviate or eliminate Plaintiff's ETS exposure. Plaintiff wholly fails to allege plausible facts to support that Dossett or Richardson have the authority to designate non-smoking units[23] or that Brnovich has the authority to direct Ryan to change ADC's ETS policy. (Order (Doc. 43) at 20.) The Fourth Amended Complaint does not cure these deficiencies. Plaintiff fails to state a claim in Count II and it will be dismissed.

/////

---

[21]     *See* https://corrections.az.gov/sites/default/files/policies/100/0109-effective_110716.pdf (last visited Nov. 3, 2017) (superseding 2013 version, allowing inmate complaints about smoking to be submitted pursuant to the grievance process and requiring employees to attempt to resolve smoking-related complaints informally through their chain of command. *Id.*

[22]     *See* DO 909, Attach. A (last visited Nov. 3, 2017).

[23]     For example, the creation of non-smoking units would essentially require two sets of units for each classification and security group.

### D.    Count III

Plaintiff designates Count III as a claim for violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc-2000cc-5, based on the alleged denial of a religious diet.[24]  RLUIPA prohibits the government from imposing a substantial burden on the religious exercise of an institutionalized person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means."  42 U.S.C. § 2000cc-1(a)(1) - (2).  Therefore, to state a claim under RLUIPA, a plaintiff must allege facts to support that government action has substantially burdened the exercise of the plaintiff's religion without a compelling government interest and by the least restrictive means.  *See Guam v. Gurerrero*, 290 F.3d 1210, 1222 (9th Cir. 2002).  "[A] 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (quotations omitted).  Thus, an institutionalized person's religious exercise is substantially burdened "'where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his belief.'"  *Id.*

As noted in connection with Plaintiff's medical diet allegations in Count I, Plaintiff has been prescribed an allergy diet, excluding dairy, peanuts, soy, wheat, and beans, but not excluding meat.  As also noted, Plaintiff is Hindu, which bars its adherents from eating meat.  Plaintiff has apparently repeatedly sought to be provided a *vegetarian* allergy diet to accommodate both his medical needs and his religious exercise, but a medical diet, i.e., an allergy diet that contains meat, has taken precedence over a religious diet.  The Court notes that according to the Plaintiff he is currently receiving exactly what he seeks: a vegetarian medical diet.  The Court also notes that the RDO forms expressly state that a medical diet takes precedent over a religious diet.  Accordingly, the Court

---

[24]  Plaintiff also includes allegations suggesting that the denial of a religious diet is motivated by retaliation.  These allegations will be considered together with Plaintiff's other allegations of retaliation.

treats the Plaintiff's claim as ripe: whether Plaintiff is entitled to a vegetarian medical diet under the RLUIPA.

The question remains answered by Judge Tashima in CV 11-00195 TUC-AWT.

The alleged facts and supplemental documents in this case show only that he has been prescribed an allergy diet, apparently without taking a RAST test. While Plaintiff claims that this reflects the ADC can accommodate both his religious and medical interests, this is not enough. To state a RLUIPA claim, the Plaintiff must allege facts to show that the denial of a *vegetarian* medical/allergy diet has imposed a substantial burden on his religious exercise absent a compelling government interest and is not the least restrictive means. As this Court found when it dismissed the medical diet claim, there are no new circumstances to call into question Judge Tashima's determination that the Plaintiff fails to establish a medical need for an allergy free diet, either medical or vegetarian. As he was when Judge Tashima reviewed this same claim, the Plaintiff is able to obtain a vegetarian diet consistent with his religion.[25] Plaintiff has alleged that since he began receiving the vegetarian medical diet, his blood sugar does not fluctuate and he does not feel weak. (Doc. 50 at 2-3.) Plaintiff fails to allege new circumstances reflecting that there is a substantial burden on the free exercise of his religion. The Plaintiff fails to state a religious exercise claim against Defendants.

### E.    Count IV: Retaliation

Plaintiff designates Count IV as a claim for retaliation, but Plaintiff asserts retaliation as the motivation for acts alleged in Counts I and III as well. These are considered herein.

---

[25]Plaintiff claims that Defendants Days, Jacobs, Robertson, Pacheco, Dossett, Richardson, Williams, Grafton, Respecio-Moriarity, and Chris Johnson refused to direct that he be given a religious diet. Plaintiff does not allege facts to support that medical staff such as Robertson, Williams, Grafton, or Chris Johnson had the authority to order or authorize a religious diet that accommodated both Plaintiff's medical needs and his religious exercise. Nor does Plaintiff allege facts to support that non-medical prison staff Days, Jacobs, Pacheco, Dossett, Richardson, or Respecio-Moriarity had the authority to order or authorize a religious diet that accommodated Plaintiff's medical needs and his religious exercise.[25] (*Id.*) Plaintiff fails to connect the RLUIPA allegations to any named Defendant.

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

The Court reviews the plethora of retaliation claims made by the Plaintiff, which have expanded since being alleged in the TAC. In that screening order the Court found his claims of retaliation where vague and conclusory and frequently incoherent. (Order (Doc. 43) at 26), and many appeared to be time-barred by the two-year statute of limitation period, *id.* at 25-26. As alleged in the Fourth Amended Complaint, the retaliation claims remain vague and conclusory. Plaintiff fails to allege facts demonstrating that his exercise of any First Amendment right was a substantial or motivating factor behind the any Defendant's conduct. Count IV will be dismissed for failing to state a claim.

### 1. Retaliatory Transfer

In Count I, Plaintiff alleges that he was transferred from the Manzanita Unit to the East Unit in retaliation for submitting a grievance based on the following:

In April 2016, CO IV Han refused to "file" a grievance submitted by Plaintiff to her. (Doc. 45 ¶ 67.) On April 21, 2016, Dossett directed Han to "file" the grievance. (*Id.*) At the urging of DW Days and CO IV Han, and for non-medical reasons, Armenta

discharged Plaintiff from the in-patient unit where he then was and transferred Plaintiff to the East Unit, although the East Unit could not accommodate Plaintiff's medical needs. (*Id.*)  Crabtree approved the transfer.  (*Id.*)  Dossett and Richardson refused to exercise their authority to have Plaintiff placed in a unit where he could "receive treatment."  (*Id.*)  Plaintiff asserts that "Defendants" engaged in the conduct alleged in Counts I to III in retaliation for Plaintiff using the grievance process, filing litigation, and for publishing his "research, a portion of which was seized by orders of Erwin."  (*Id.* ¶ 68.)

Plaintiff fails to allege specific facts to support that any allegedly adverse action was taken against him in retaliation for Plaintiff engaging in constitutionally protected conduct.  For example, Plaintiff has not alleged that a medical professional ordered that he receive medications every eight hours or that any Defendant transferred him to the East Unit despite knowing that the East Unit could not provide appropriate medical care for him there.  Nor has Plaintiff alleged facts to support that any Defendant is or was aware of any adverse statements made by Plaintiff about ADC or its officials, much less any "research" of Plaintiff, or that Plaintiff was transferred to another unit because he had commenced or attempted to commence any litigation.  Finally, Plaintiff also fails to allege that any alleged retaliation has in any way chilled the exercise of his First Amendment rights or caused more than *de minimis* impact.

Plaintiff also alleges that a "clinical staffing" concerning him was held, which was not authorized under Health Services Technical Manual, Chapter 7.1.8.1.1, as retaliation. (*Id.* ¶ 33.)  He alleges that the clinical staffing was conducted because he filed grievances about the alleged denial of care and replacement of lost items.  These allegations are conclusory and vague, and absent more, will not support his claim that the staffing was taken in retaliation for Plaintiff's submission of grievances.

Plaintiff further alleges that he has been transferred from various units in various complexes over the last seventeen years.  He claims that his transfers were motivated by his filing of grievances and litigation.  According to Plaintiff, Crabtree, Dossett, Ryan, Jacobs, Pachecho, Richardson, Days, and Smith-Whitson transferred him "pursuant to

[ADC] Policies to transfer inmates who use the grievance and litigation processes, approved these transfers." (*Id.* ¶76.) Again, absent more, these allegations are vague and conclusory. Plaintiff does not allege facts to support that *any* transfer was made in retaliation for him submitting a grievance or filing a lawsuit.

### 2. Denial of Medical Books

Plaintiff alleges that Erwin retaliated against him by denying him permission to obtain medical books, which Plaintiff wanted to use to facilitate litigation. Plaintiff does not allege that inmates generally are allowed to obtain such books, nor does he allege facts to support that Erwin denied him permission to obtain such books in retaliation for Plaintiff engaging in any constitutionally protected conduct.

To the extent that Plaintiff may be attempting to assert that Erwin denied him access to the courts, Plaintiff also fails to state a claim. The right of meaningful access to the courts prohibits officials from actively interfering with inmates' attempts to prepare or file legal documents. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). But the right of access to the courts is only a right to bring petitions or complaints to federal court and not a right to discover such claims or even to ligate them effectively once filed with a court. *Id.* at 354. The right "guarantees no particular methodology but rather the conferral of a capability–the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id*. at 356.

As a matter of standing, for an access-to-courts claim, a plaintiff must show that he suffered an "actual injury" with respect to contemplated litigation. *Id*. at 349. To show actual injury with respect to contemplated litigation, the plaintiff must demonstrate that the defendants' conduct frustrated or impeded him from bringing to court a nonfrivolous claim that he wished to present. *Id*. at 352-53.

"[T]he injury requirement is not satisfied by just any type of frustrated legal claim." *Id*. at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id*. at 355. The nonfrivolous

claim must be a direct or collateral attack on the inmate's sentence or a challenge to the conditions of his confinement. *Id.* "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original).

Plaintiff does not allege facts to support that Erwin prevented or impeded Plaintiff from filing this, or any other, action. Further, Plaintiff fails to allege facts to support that Erwin denied him leave to obtain medical reference books to impede his ability to present claims in court or that the denial impaired his ability to file any action.

### 3. Brnovich

Plaintiff alleges that Arizona Attorney General Brnovich failed to formulate a policy that barred his subordinates from directing their clients to commit constitutional torts. Plaintiff claims that Brnovich failed to formulate such a policy in retaliation for Plaintiff engaging in constitutionally protected conduct, presumably by filing law suits. These allegations are vague and wholly conclusory. Plaintiff fails to allege facts to support that any of Brnovich's subordinates directed any client to commit constitutional torts and fails to allege facts to support his policy challenge.

### 4. Denial of Distance Learning

Plaintiff alleges that he has been denied permission to participate in self-paid distance or correspondence courses in retaliation for submitting grievances and based upon the content of Plaintiff's "research" about ADC. (Doc. 45 ¶ 61.) Plaintiff alleges the following facts:

In 1998 and 2001, ADC allowed Plaintiff to complete 36 credit hours from Rio Salado Community College. From 2006 to 2008, Plaintiff completed an additional 18 credit hours from Central Arizona College and Cochise College. (*Id.* ¶ 64.) At some point, Plaintiff was approved to complete an "LLM from London" and Plaintiff earned an LLM. (*Id.* ¶ 61.)

On February 23, 2015, DW Days approved Plaintiff to complete a Ph.D. But, emails sent by CO IV Han on January 12, 2016 "with attachments" to Lawrence "show

*they* asked Lawrence to overturn that approval at the request of Erwin and Lawrence did so." (*Id.*) (Emphasis added). It is unclear who "they" refers to. *See* (Doc. 50 at 20): March 2014 form captioned as "Approval of Distance Learning Materials/Arrangements" (expressly stating that "THIS FORM MUST BE FILLED OUT FOR <u>EACH</u> CLASS YOU ARE REGISTERING FOR," listing the "Course Name" as "Doctorate" with an open end date, reflecting April 3, 2014, ADW Hensley approved the distance learning materials/arrangement form and April 25, 2014, DW Days approved the form.)

In June 2016, Lawrence told Plaintiff that he would not be allowed to participate in the program because he was not a United States citizen. (*Id.* ¶ 62.) Plaintiff states that "[a]s I was previously approved I published my research as a[n] e.book." (*Id.* ¶ 63.) *See* (Doc. 50 at 21): August 18, 2016 Inmate Grievance Appeal Response (appeals officer denied Plaintiff's appeal from the denial of his ability to complete classes from the University of London International Program or reimbursement for the cost of the program, stating Plaintiff not eligible because he was criminal alien with a pending detainer).

According to Plaintiff, Lawrence's reason for reversing approval was "bogus" where Plaintiff had previously been allowed to participate in such programs.[26] Plaintiff claims that his submission of grievances and the content of his "research," which showed the internal workings of ADC and of the Arizona Attorney General's Office, were the motivating factors in denying him permission to complete the program. (*Id.* ¶ 65.) Plaintiff asserts that although Dossett and Richardson had "apparent authority" they refused to exercise that authority to grant him relief. (*Id.*)

Department Order 910.1.3.3, last revised September 18, 2015, provides that "inmates shall not be eligible for educational evaluation and/or programming when they are . . . [c]riminal [a]liens legally present in the United States with a detainer or order of

---

[26] Plaintiff does not explain why Lawrence, rather than Days, had the authority to reverse the decision.

protection."[27]   Although DO 910.07 provides that inmates may apply to take self-paid distance learning/correspondence courses subject to various conditions and restrictions,[28] "[p]articipation in self-pay distance learning/correspondence courses is limited to inmates eligible for educational programming, in accordance with this Department Order."[29] According to ADC's website, the United States Department of Justice has lodged a detainer against Plaintiff as a criminal alien.[30]

Taking judicial notice of ADC DO 910.07 which bars criminal aliens with a detainer from participating in distance learning/correspondence courses and Plaintiff's status as a criminal alien with a pending detainer, the Court rejects the Plaintiff's factual allegation that the reason Lawerence reversed approval for the class was bogus.  *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988, amended on other grounds, 275 F.3d 1187 (9th Cir. 2001) (in considering whether allegations state a claim, court need not take allegations of material fact as true that contradict matters properly subject to judicial notice, nor allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences).

Plaintiff submitted documents reflecting that another inmate, Justin Thrasher, who apparently is not a United States citizen, was granted permission to participate in distance learning.  (Doc. 49 at 7-9.)  However, ADC records available online do not reflect that a

---

[27]  *See* https://corrections.az.gov/sites/default/files/policies/900/0910u_011917.pdf (last visited Nov. 2, 2017).

[28]  For example, courses requiring internet access are not permitted, inmates are responsible for all fees and costs for tuition and course materials, and courses must be offered by a college, university or school accredited by an agency and approved by the United States Department of Education.

[29]  Further, subsection 910.07.1.18 provides that an inmate shall not order textbooks or other required course materials prior to being notified that their Distance Learning Materials/Arrangements Approval, Form 910-3 has been approved by the unit/institution Correctional Education Program Supervisor (CEPS).  Materials ordered prior to approval "shall be returned to the college, university or school at the inmate's expense."  As noted above, the form for approval specified that approval for each course, rather than for each degree, must be obtained.

[30]  *See* https://corrections.az.gov/public-resources/inmate-datasearch (last visited Nov. 2, 2017).

criminal alien detainer has been lodged against Thrasher, unlike Plaintiff.

Besides his conclusory assertion, the Plaintiff has not alleged facts to support his claim that approval to participate in distance learning or correspondence courses was withdrawn for reasons other than his criminal alien/detainer status.

### 5. Denial of Legal Access

Plaintiff alleges that Erwin has denied him the same level of legal access afforded to other inmates as retaliation. Plaintiff alleges the following:

On April 26, 2016, Erwin sent an email with an attachment to CO III Brennan, DW Smith-Whitson, and librarian Hernandez. According to Plaintiff, Erwin directed them not to give him "the same legal access as all [other] inmates." (Doc. 45 ¶ 69.) Further, according to Plaintiff, the attachment to the email falsely stated that Plaintiff, his family, and friends had been complaining to the legislature and press about ADC wrongs against Plaintiff. According to Plaintiff, Erwin, Klausner, Rogers, Dossett, and Daryl Johnson have in the past sent similar emails with the same attachment. Plaintiff claims that the attachment to the email supported "every item in a memo dated September 2, 2008 written by Daryl Johnson and [has] been treated by AD[]C employees as a request to retaliate against [him], a fact, AD[]C employees have told [him]."[31] (*Id.* ¶ 70.)

At some point, Carter, Klausner, Morrissey, Pacheco, Smith-Whitson, D. Johnson, Dossett, Jacobs, Ryan, Erwin, and Ulibarri "made a special legal access policy[] that conflicts with AD[]C Policy DO 902" and singled out Plaintiff for denial of privileges afforded to other prisoners under DO 902. (*Id.* ¶ 72.) According to Plaintiff, he is the only inmate who is not authorized to make legal copies, send legal mail, or receive legal supplies in accordance with DO 902. At some point, Ulibarri allegedly refused to send

---

[31] In Counts I and IV, Plaintiff makes this same allegation. Plaintiff does not allege how or when he saw the September 2008 memorandum or to whom Johnson sent the memorandum. Generally, Plaintiff asserts continuous conduct by ADC against him since 2000. (Doc. 45 ¶ 60.) Plaintiff seemingly asserts that he has been subjected to retaliation in response to the email and the attachment and attributes actions with which he disagrees as taken pursuant to the email and attachment. The Court finds these allegations insufficient to state claims of retaliation in Counts 1 and IV.

legal mail, give Plaintiff legal supplies, or make legal copies for Plaintiff. Plaintiff does not allege when. Finally, Plaintiff alleges that he has had other inmates make legal copies, get him legal supplies, and send out legal mail under their names. Plaintiff asserts that although he is violating prison rules by doing so, he has no other way of exercising his right to access the courts. (*Id.* ¶ 79.)

Plaintiff does not allege the contents of the email, the attachment, or the Johnson Memo much less that any of them urged that prison officials retaliate against Plaintiff for engaging in constitutionally protected conduct. Nor does Plaintiff allege facts to support that any allegedly adverse action taken against him was in retaliation for Plaintiff's exercise of constitutional rights. Instead, he links this claim to complaints made to the press by his family and friends; he fails to allege facts to support that his First Amendment rights have been chilled or resulted in more than *de minimis* harm.

Plaintiff fails to allege specific facts to support when and how each Defendant allegedly denied him legal access. The current version of DO 902 became effective on July 6, 2013 and contains more than twenty pages.[32] Plaintiff fails to allege when, how, and by whom he was denied legal access under 902, including which provisions of DO 902. Plaintiff also fails to allege facts to support that he has been singled out or treated differently than similarly situated inmates under DO 902. Instead, Plaintiff makes only vague and conclusory assertions unmoored from any specifics. Plaintiff was clearly able to commence this case and numerous other cases over the course of his incarceration. In addition, Plaintiff fails to allege an actual injury as the result of any alleged denial of legal access. For these reasons, Plaintiff fails to state a claim based on these allegations.

### 6. Record Destruction

Plaintiff alleges that numerous records pertaining to him were destroyed as retaliation. He alleges the following:

---

[32] *See* https://corrections.az.gov/sites/default/files/policies/900/0902-effective_070613.pdf (last visited Sept. 7, 2017).

At some point, approximately 3,000 records that had been held at four locations and that constituted evidence against ADC "defendants" disappeared. (Doc. 45 ¶ 71.) An unidentified deputy warden reconstructed the records pursuant to his authority to resolve grievances. According to Plaintiff, the records exposed ADC "defendants to liability, as special policy makers" and Rogers, Klausner, D. Johnson, Carter, Morrissey, Dossett, and Ryan "directed by special policy, that the reconstructed records [were] not to be considered." (*Id.*) Plaintiff has submitted copies of three 1999 Inmate Grievance/Investigation Reports concerning lost documents. (Doc. 50 at 7-9.)

Plaintiff has previously alleged the loss of approximately 3,000 records. *Tripati v. Brewer*, No. CV 10-00429-TUC-AWT (D. Ariz. Oct. 14, 2010), *see e.g.,* Doc. 12 ¶¶ 61, 63, 68, 75, 76, 77. In that case, the Court dismissed Plaintiff's allegations, which concerned the loss of records in 2008, as time-barred. Plaintiff has not alleged facts to support that his records or other property have been lost or destroyed within two years of the commencement of this case. Indeed, Plaintiff's allegations are vague and conclusory and otherwise appear to be barred by res judicata and/or the statute of limitations

### 7. **Forgery**

Under the sub-heading of "Forgery," Plaintiff alleges the following:

Nurse Martinez forged a refusal signed by Plaintiff and Nurses Porter and Lyons, Dr. Burciaga, DWs Pacheco, Days and Jacobs, and Director Ryan "pursuant to Corizon and Ryan's policies" upheld that forgery. (Doc. 45 ¶ 74.) According to Plaintiff, the document was falsified so that it could be used to defeat litigation. Plaintiff claims that ADC and Corizon have falsified evidence presented in other inmates' cases filed in Arizona and other states and lists numerous cases filed against Corizon and/or ADC in Arizona and elsewhere. (*Id.*)

Plaintiff fails to allege when, where, or what "refusal" he refers to, or how the refusal was forged or falsified. Nor does he explain why he signed the forged "refusal," or when and how any Defendant "upheld" the forgery. Moreover, Plaintiff fails to allege

facts to support that the alleged forgery constituted retaliation for any protected conduct. Plaintiff's vague and conclusory assertions are insufficient to state a claim.

### 8. Retaliatory Discipline

Under the sub-heading of "Retaliatory Discipline," Plaintiff alleges that at unspecified times and places, Plaintiff was disciplined for filing grievances, filing litigation, having a television replaced by ADC, and having a headphone sent to him by his family. (Doc. 45 ¶ 75.) "After being found guilty" the items were returned to Plaintiff. (*Id.*) Plaintiff contends that "a series of manufactured retaliatory tickets" were issued to him and that Dossett and Klausner upheld them. (*Id.*)

Again, while Plaintiff asserts that he was issued a series of disciplinary charges, he fails to allege when or for what they were issued or *facts* to support that they were issued in retaliation for Plaintiff engaging in protected conduct. Nor does Plaintiff allege facts to support that he was subjected to atypical and significant hardships to the extent that he may be attempting to assert a violation of due process. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."). "Atypicality" requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. *See Carlo v. City of Chino*, 105 F.3d 493, 499 (9th Cir. 1997). To determine whether the sanctions are atypical and a significant hardship, courts look to prisoner's conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *See Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996).

### 9. Lost Property

Under the sub-heading "Loss of Property," Plaintiff alleges that his property and/or legal materials have been lost or destroyed sixteen times. (Doc. 45 ¶ 77.)

According to Plaintiff, he prevailed on grievances concerning the losses twelve times, but Carter and Morrissey urged that he be denied compensation and he was denied compensation. (*Id.*) Plaintiff fails to allege when his property was lost, what property was lost, or when and how he sought replacement or compensation for lost property. Plaintiff also fails to allege plausible facts to support that Carter or Morrissey urged that he be denied compensation, facts to support that he was wrongfully denied compensation in violation of due process, or that he was denied compensation in retaliation for engaging in protected conduct. For all of these reasons, these allegations will be dismissed.

### F.    Count V: Fraud on the Court

In Count V, Plaintiff alleges that Defendants Carter, Morrissey, Klausner, Daryl Johnson, Erwin, Ryan, Rogers, Robertson, Dossett, Respicio-Moriarity, Smith-Whitson, Jacobs, Days, Pacheco, Richardson, and Valencia perpetrated a fraud on the court in connection with CV 11-00195 TUC-AWT.

As explained by the Ninth Circuit, Rule 60(b) of the Federal Rules of Civil Procedure preserves the district court's right to hear an independent action to set aside a judgment for fraud on the court. *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003). But an independent action to set aside a judgment for fraud on the court is "'reserved for those cases of injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata.'" *Id.* (quoting *United States v. Beggerly*, 524 U.S. 38, 46 (1998) (internal quotation marks omitted)). Thus, "an independent action should be available only to prevent a grave miscarriage of justice." *Beggerly*, at 47 (holding that allegations that the prevailing party failed during discovery in the underlying case "to thoroughly search its records and make full disclosure to the Court" were not fraud on the court).

"[T]he basis for an independent action to set aside a judgment for fraud on the court lies in misconduct that 'harm[s] the integrity of the judicial process.'" *Appling*, at

780 (quoting *In re Levander*, 180 F.3d 1114, 1118 (9th Cir. 1999)).  As explained by the Ninth Circuit,

> "Fraud on the court" . . . embrace[s] only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

*Appling*, at 780  (quoting *In re Levander*, 180 F.3d at 1118) (internal quotation marks)).  "Non-disclosure, or perjury by a party or witness, does not, by itself, amount to fraud on the court.  *Appling*, at 780  Instead, fraud on the court requires a "'grave miscarriage of justice'" and a fraud that is aimed at the court.  *Id.* (quoting *Beggerly*, 524 U.S. at 47.)

In Count V, Plaintiff alleges that ADC has engaged in an ongoing, continuous course of conduct since 2000.  In July 2016, Plaintiff first saw an attachment to an April 26, 2016 email from Erwin to CO III Brennan, which "confirm[ed]" a September 2008 Johnson memo "that evidence be destroyed."  (Doc. 45 ¶ 83.)  Plaintiff claims that emails, attachments, and recorded phone calls show that evidence was fabricated and fraud committed.  Generally, he reurges the allegations seen in the retaliation claim here.

Specifically, he alleges that Carter and Morrissey act as both attorneys and policymakers and that in CV 11-00195 TUC-AWT, "defendants" concealed that Plaintiff "could not take RAST" and argued that he must take RAST and that but for such concealment, "they would not have prevailed."  (*Id.* ¶ 87.)  According to Plaintiff, "[t]hey" knew these were materially false arguments "but did so pursuant to policy in [¶] 74 above. (*Id.* ¶ 87.)  This claim fails because Plaintiff was free to assert before Judge Tashima the assertion he makes now that his taking prednisone alters the immune system and prevents RAST.  (Doc. 45 ¶109.)

Alternatively, "they concealed" emails and documents in CV 99-20757[33] that showed that "there are too many complaints as to loss of property" and "they did so

---

[33]  Plaintiff appears to refer to a case filed in Maricopa County Superior Court in which Plaintiff alleged that defendants had intentionally deprived him of personal property, including legal materials related to his conviction.  *See Tripati v. Arizona*, 16

pursuant to their policy in [¶] 74 above" and knew "this" to be materially false. (*Id.*) As he did in his retaliation claim related to record destruction, he claims that ADC policy is to destroy emails and documents that "they" know are potential evidence (*Id.* ¶ 89) and there are no available post-deprivation or administrative remedies available to him by way of "special policies made by Carter, Klausner, Daryl Johnson, Erwin, Ryan, Rogers, Robertson, [and] Morrissey," despite conflicts with ADC written policies. (*Id.* at 90.) He claims that Defendants Dossett, Respicio-Moriarity, Smith-Whitson, Jacobs, Days, Pacheco, Robertson, Richardson, Valencia, Daryl Johnson, and Erwin have refused to exercise their authority to afford Plaintiff relief.

He realleges facts seen in the retaliation claims related to lost property: his property and legal materials have been lost or destroyed at least 16 times and he has prevailed in grievances at least 12 times, but at the urging of Carter and Morrissey, Plaintiff was denied just compensation. Defendants Morrissey, Klausner, Dossett, Respicio-Moriarity, Smith-Whitson, Jacobs, Days, Pacheco, Robertson, Richardson, Valencia, Daryl Johnson, Erwin, Rogers, and Carter have concealed the number of complaints about property loss during litigation "so as to prevail." (*Id.* ¶ 93.) They did so pursuant to ADC "authorized established procedures approved by Ryan." (*Id.* ¶ 94.) Brnovich "refused to promulgate appropriate policies to ensure that his employees such as Carter and Morrissey not direct agencies to violate constitutional torts thereby causing defendants to deny [Plaintiff] adequate post-deprivation remedies." (*Id.* ¶ 95.) Klausner, Erwin, Daryl Johnson, Dossett, Richardson, Jacobs, Pacheco, Smith-Whitson, and Days have "apparent authority to prevent such denials," but refused to exercise that authority. (*Id.*)

---

P.3d 783, 784 (Ariz. Ct. App. 2001). The Arizona Court of Appeals affirmed in part and reversed and remanded in part. *Id. See Tripati v. Thomson*, No. 2:03cv01122-PHX-DGC (D. Ariz. Dec. 28, 2005) (alleging in second amended complaint ¶ 6(f)) that various defendants and every member of the Arizona Attorney General's Office had approved the "'custom and tradition of withholding, fabricating, destroying evidence adverse to them and favorable to inmates' in cases where inmates are litigants" in connection with CV 99-20757 and other cases in which Plaintiff had been unsuccessful; dismissed for frivolousness), *see also supra.* n.1.

These allegations are no less vague and conclusory stated here than when stated to support the claim of retaliation. Plaintiff has not alleged facts to support that an independent action to set aside a judgment for fraud on the court is appropriate as to any of Plaintiff's previous cases. *See Appling*, 340 F.3d at 780. For the reasons discussed, Count V will be dismissed for failure to state a claim.

## G.    Count IV: Spoliation

Plaintiff designates Count VI as a claim for spoliation. Destruction of evidence or the failure to preserve property for another's use as evidence in pending litigation constitutes spoliation. *See United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). Specifically, failure to "preserve electronic or other records, *once the duty to do so has been triggered*, raises the issue of spoliation of evidence and its consequences." *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (emphasis added) (quoting *Thompson v. U.S. Dep't. of Hous. & Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003)); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (noting willful destruction of electronic files constituted spoliation). The "duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Ashton v. Knight Transp., Inc.,* 772 F.Supp.2d 772, 800 (N.D. Tex. 2011). Thus the duty to preserve is triggered "not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Morford v. Wal-Mart Stores, Inc.,* No. 2:09-cv-02251-RLH-PAL, 2011 WL 635220, at *3 (D. Nev. Feb. 11, 2011); *see Zubulake v. UBS Warburg LLC,* 220 F.R.D. 216 (S.D.N.Y. 2003). A court has discretion under its inherent powers to sanction a party who causes the spoliation of evidence. *See Leon*, 464 F.3d at 958.

But this Court has found no authority under federal or Arizona state law to support the existence of a tort for spoliation. *Cf. Oliver v. Stimson Lumber Co.*, 993 P.2d 11, 19 (Mont. 1999) (the Montana Supreme Court has recognized the torts of negligent and intentional spoliation of evidence as independent causes of action); *National Interstate*

*Ins. v. Beall*, No. 3:14cv01245, 2015 WL 1137440, at *4 (D. Ore. March 22, 2015) (Oregon state courts have divided over whether an independent cause of action for intentional or negligent spoliation would be recognized under state law); *Sullivan v. MGM Mirage*, 2013 WL 1248417, at *2 (D. Nev. Feb. 11, 2013) (Nevada does not recognize an independent tort for spoliation of evidence).

Plaintiff has not alleged specific facts to support that any Defendant has negligently or intentionally failed to preserve evidence relevant to pending or future litigation. Rather, Plaintiff asserts that Defendants are liable for spoliation because they do not indefinitely preserve all emails, recordings of telephone calls, or other evidence. That is not sufficient to state a claim for spoliation even if such a claim was recognized under Arizona or federal law. Accordingly, Count VI will be dismissed.

## H. Count VII: Equal Protection

Plaintiff designates Count VII as a claim for violation of equal protection. He alleges Corizon, Williams, Burciaga, Johnson, Grafton, Armenta, Martinez, Porter, Lyons, Smith-Whitson, Bedoya, Days, Jacobs, Han, Erwin, Respecio-Moriarity, Dossett, Richardson, Crabtree, Valencia, Robertson, Carter, Morrissey, Rogers, Klausner, Ryan, D. Johnson, Pacheco, Johnson, Flat, Nolan, Walker, Myers, Witty, Orr, and Bowers have each intentionally singled Plaintiff out for different treatment and caused him to be denied the same or similar treatment to all other inmates similarly situated and absent a rational basis. (Doc. 45 ¶ 107.) "They" singled out Plaintiff because he submitted grievances, challenged these Defendants' actions and policies in court, and publicized their actions against him. (*Id.* ¶ 108.) "They" do not treat other inmates who engage such activities in the same manner. According to Plaintiff, Carter directed "defendants" not to follow their own regulations when it involves him and "made special regulations." (*Id.*) "They concealed from the courts that Prednisone alters the immune system and prevents RAST, though the Chief Clinical Officer of Corizon advised them of this and the Arizona Medical Board initiated disciplinary proceedings against Williams." (*Id.* ¶ 109.) "They directed employees to act contrary to prison regulations causing

constitutional torts in counts one to six. It is ADOC policy to destroy" emails and documents that they know from experience is potential evidence. (*Id.* ¶ 110.) Brnovich refused to promulgate policies to ensure that "persons" are not singled out. (*Id.* ¶ 111.) "They acted pursuant to ADOC and Corizon's policies to single out those who challenge them and their policies." (*Id.* ¶112.) Plaintiff asserts that he has been singled out as reflected in Counts I-VI, which he claims constitutes an atypical and substantial hardship in three yards and asserts that he is the only one that this has happened to on three yards. (*Id.* ¶ 113.) And, "T[t]ey directed them to engage in the constitutional torts in counts one to six." (Id. ¶ 108.)

Generally, "[t]o state a claim . . . for a violation of the Equal Protection Clause . . . [,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Plaintiff has not alleged he is a member of a protected class.

The United States Supreme Court has also recognized "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also SeaRiver Maritime Financial Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). Plaintiff fails to allege *facts* to support that he has been treated differently than similarly situated inmates. Plaintiff merely makes conclusory assertions that he has been treated differently than other inmates, absent a rational basis. Plaintiff asserts that discovery of emails would establish his allegations, but discovery may not serve as a fishing expedition for a claim. Plaintiff must first allege *facts* sufficient to state a claim against each of the Defendants, including when, where, and how each Defendant has violated his equal protection rights. Plaintiff has failed to do so in Count VII and it will be dismissed.

/////

## IV. Dismissal without Leave to Amend

Plaintiff is and has long been a prodigious litigator, although apparently never a successful one. Plaintiff long ago accumulated three strikes for prior prisoner civil rights actions brought in forma pauperis that were dismissed as frivolous, malicious, or for failure to state a claim. *See supra* n.1. As discussed above, Plaintiff continues to attempt to re-litigate claims from closed cases and to justify revisiting those closed cases by asserting that defendants falsified or concealed evidence, committed a fraud on the court, or by asserting intervening facts that are insufficient to support those claims.

In this case, Plaintiff again sues many of the same Defendants that he has repeatedly sued and he attempts to re-litigate claims that were decided against him in the past, while attributing newly perceived wrongs as part of a policy or practice. The Court does not discount the possibility that Plaintiff's litigiousness, or other behavior, could prompt prison employees or state officials to cross constitutional boundaries. However, if any Defendant has done so, Plaintiff has failed to set forth specific facts to support when, where, and how that Defendant has done so in this case. Plaintiff's failure to state a claim is attributable to Plaintiff's inability to allege specific facts rather than conclusory assertions to support any of his claims.

Because Plaintiff has failed to state a claim in his Fourth Amended Complaint, it will be dismissed. "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend. *Moore*, 885 F.2d at 538.

This Court has screened two of Plaintiff's five attempts to craft a viable complaint. As he did before, he fails to state a claim in his Fourth Amended Complaint even after being afforded a detailed explanation regarding pleading deficiencies in the TAC. The

Court finds that further opportunities to amend would be futile. Therefore, the Court, in its discretion, will dismiss Plaintiff's Fourth Amended Complaint without leave to amend. Plaintiff's Notices and Motions will be denied to the extent that any relief is sought therein.

**Accordingly,**

**IT IS ORDERED** as follows**:**

**(1)     Plaintiff's motion for stay and abate time (Doc. 63) is denied.**

(2)     Plaintiff's motion for leave to file a fifth amended complaint (Doc. 57) is **denied**.

(3)     Plaintiff's ex parte application for a temporary restraining order (Doc. 58) is **denied**.

(4)     Plaintiff's motion for leave to file a supplemental complaint (Doc. **50**) is **denied**.

(5)     Plaintiff's notices (Docs. 48, 49, 53, 54, 61) are **denied** to the extent that any relief is sought therein.

(6)     Plaintiff's Fourth Amended Complaint (Doc. 45) and this action are **dismissed** for failure to state a claim.

(7)     The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

(8)     The docket shall reflect that the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that any appeal of this decision would not be taken in good faith.

/ / /

/ / /

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment accordingly.

Dated this 23rd day of January, 2018.

_____
Honorable David C. Bury
United States District Judge