Anant Kumar Tripati
102081 P-O- Box 5000
Moreniq, Az    85132

FILED ___    ___ LODGED
RECEIVED ___    ___ COPY

JUL 24 2018

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____    DEPUTY

## Ninth Circuit Court of Appeals

| Anant Kumar Tripati | CIV 16- 0282 DCB |
|---|---|
| vs. | Notice Of |
| Corizon Inc, et. al | Appeal. Counsel |
| | Requested |

I Appeal Doc. 76 And State As Grounds:

(1) Doc. 72 should have Been granted on grounds of Surprised And excusable neglect. (Ex A)

Specifically — I was Surprised when the District Judge Refused to grant me Leave to Amend, though the Deficiencies could have been Cured Like Herrera, 427 F. 3d 1164, 1169 (9th Cir. 2005)

Furthermore — the Sanction

OF Not Allowing me leave to Amen
Just Because — the Font was
Small — was An Abuse of Discretion

(2) As I Argue in my Rule
60(b)(1)(2) Motion the Court was is
Biased

I Ask this Court to
Remove this matter to Consider
Doc 72 And Allow me leave to
File the attached .

Respectfully

-2-

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Anant Kumar Tripati,

       Plaintiff,

v.

Corizon Incorporated, et al.,

       Defendants.

No. CV-16-00282-TUC-DCB (P)

**ORDER**

    On January 23, 2018, this Court dismissed this action for failure to state a claim, including a "strike" under 28 U.S.C. § 1915(g) for frivolousness, and entered Judgment against the Plaintiff. He appealed. On April 26, 2018, the Ninth Circuit Court of Appeals, after conducting a pre-filing review, determined the matter should not proceed because it was insubstantial and entered the Mandate. This case is closed. All subsequently filed motions and notices are moot.

    **Accordingly,**

    **IT IS ORDERED** that all pending motions (Docs 72 and 73) are DENIED AS MOOT.

/////
/////
/////
/////

1   **IT IS FURTHER ORDERED** that the Clerk of the Court shall not accept further

2   filings from Plaintiff in this matter.

3   Dated this 18th day of July, 2018.

4

5

6   _____

7   Honorable David C. Bury
    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Anant Kumar Tripati 102081
Arizona State Prison-east Unit
Post Office Box 5000
Florence, Arizona 85132

Plaintiff, Pro Per

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| ANANT KUMAR TRIPATI, | CIV 16-0282 TUC DCB |
| Plaintiff. | CONSOLIDATED MOTION TO DISQUALIFY PURSUANT TO 28 U.S.C. 144 & 455; TO VACATE PURSUANT TO RULE 60(b)(1)(2); TO WAIVE LRCIV. 3.4(a); TO AMEND  Lira v Herrera, 427 F.3d 1164, 1169 (9th Cir. 2005) ; MOTION TO EXCEED PAGE LIMITS. DECLARATION;    APPENDIX |
| Vs. | |
| CORIZON INC et al., | |
| Defendants. | |

Plaintiff, moves the court to recuse itself pursuant to 2 U.S.C. 144 and 455; to vacate the judgment pursuant to Rule 60(b)(1)(2); to grant him leave to amend and waive compliance with LRCiv. 3.4(a).  the Court approved form has six pages and allows fifteen additional pages making it a total of 21 pages. Plaintiff asks that he be allowed to exceed that page limits by two pages. In support thereof he submits:

### SUMMARY OF THE ARGUMENT 2

### STANDARD FOR RULE 60(b)(1)(2) MOTIONS 2

### REQUEST FOR JUDICIAL NOTICE 3

### THIS COURTS  DEEP SEATED BIAS IN FAVOR OF LITIGANTS WITH COUNSEL AND AGAINST PRO PER LITIGANTS MANDATE RECUSAL. 4

### DUE PROCESS MANDATES RECUSAL DUE TO JUDICIAL BIAS IN FAVOR OF LAWYERS AND AGAINST PRO PER LITIGANTS 6

### THE LAW ON RECUSAL 7

*THIS COURT'S ACTION FITS THE DEFINITION OF PARTIALITY* 7

*WHEN LAWYERS ARE INVOLVED THIS COURT REFUSES TO APPLY COMMON SENSE AND JUDICIAL COGNITION IN PRO PER LITIGATION* 8

*THIS COURT'S ACTIONS SHOW PROTECTION OF LAWYERS* 9

*THE ACTIONS BY THIS COURT AGAINST PLAINTFF AND PRO PER LITIGANTS MANDATE RECUSAL AS THEY SHOW BIAS AGAINST PRO PER LITIGANTS* 10

*THE COURT SHOULD VACATE DOCUMENT 64 AND ALLOW PLAINTIFF LEAVE TO AMEND. DUE TO JUDICIAL BIAS AND AS PLAINTIFF SATISFIES THE SURPRISE, EXCUSABLE NEGLECT AND NEWLY DISCOVERED PROVISIONS OF RULE 60(b))(1)(2)* 12

*CONCLUSION* 14

*DECLARATION* 15

TABLE OF APPENDIX

## SUMMARY OF THE ARGUMENT

As judicial decisions by this court[1] show this court due to its bias in favor of litigants represented by counsel and against litigants without counsel this court applied the heightened pleading standards in this matter when it entered document 64, (See Table 4) Plaintiff asks that document 64 be vacated.

## STANDARD FOR RULE 60(b)(1)(2) MOTIONS

Doc 64 was issued January 23, 2018 and Rule 60(b)(1)(2) allows a court to vacate an order based on surprise and excusable neglect. Black's law Dictionary Eighth Edition defines "Surprise" as an occurrence that

---

[1] Plaintiff asks this court to take judicial notice of orders issued by this court in cases where litigants have counsel and cases where they are without. M/V Am. Queen v San Diego Marine, 708 F.2d 1489 (9th Cir. 1983) courts may take note of orders in similar cases. These decisions show his court is biased in favor of represented litigants and against those without counsel.

affects someone in an unexpected way…an if a party has diligently prepared the case and is nevertheless taken by surprise on a material point…that fact can sometime be grounds for relief from the judgment under Rule..60" (Page 1484) It defines "Excusable neglect" s a failure which the law will excuse   to take some proper step at the proper time…because of some unexpected  or unavoidable hindrance." (Page 1061).

When as in this case material facts such as that in Table 1, 2, 3 were in existence but were discovered after the decision and would have changed the results, Rule 60(b)(2) allows a new trial.  Jones v Lincoln Elec 188 F.3d 709, 732 (7th Cr. 1999)

These facts in Tables 1, 2 and 3 as well as this court being biased in favor of litigants with counsel, existed prior to  the decision. However due to the failure of defendants to disclose and lack of a law library, Plaintiff had no access to these. Plaintiff was surprised at the decision by this court. Hence surprise and excusable neglect justify a new trial.

The law is clear when   defendants such as those named in this case act with unclean hands they are barred from relief. Chafee, Coming Into Equity with  Clean Hands I (1949) 47 Mich. L. Rev. 87; II (1949) 47 Mich. L. Rev. 1065

As Plaintiff satisfies these provisions Document 64 should be vacated.

Plaintiff should be granted leave to amend for the Ninth Circuit in Lira v Herrera, 427 F.3d 1164, 1169 (9th Cir. 2005) has stated leave to amend should be granted if a complaint has been dismissed for failure to state a claim.

As the complaint is substantially in  compliance with the court approved form, the provisions of L.R.Civ. 3.4(a) authorizes this court to waive use of the form and exceed page limits by two pages. .

## REQUEST FOR JUDICIAL NOTICE

This court may judicially notice "orders  in similar cases in considering scope" M/V Am. Queen v San Diego Marine Constr. 708 F.2d 1483 (9th Cir. 1983). Plaintiff asks this court to judicially notice the decisions by this bench in cases where inmates have been Plaintiff's and the Arizona Department Of Corrections, Corizon Inc,

and Wexford Health Sources Inc have been parties with "counsel representing them." This court's decisions reflect bias against inmate/pro per litigants.

Specifically the decisions by this bench in every case shows that when inmates have proceeded without counsel, this court has declined to order defendants disclose evidence , used heightened standards[2] against inmates not represented by counsel, declined to judicially notice the fact that the same lawyers in every case create the same obstacle to prevent inmates from presenting their claims.

**THIS COURTS  DEEP SEATED BIAS IN FAVOR**

**OF LITIGANTS WITH COUNSEL AND AGAINST**

**PRO PER LITIGANTS MANDATE RECUSAL.**

When Plaintiff brought to the attention of this court the fact that Paul Edward Carter and Joseph Scott Conlon falsified and concealed evidence in CIV 130615, this court declined to do anything though the "misconduct related to the matters in controversy so as to interfere with the proper resolution of the matters before this court." Haloco Eng,g  Co. v Costle, 842 F.2d 376, 379 (9th Cir. 1988). In Doc 64 when this court's attention was brought out to the fact that defendants and their lawyers conceal and falsify evidence to prevail in litigation, this court found reasons to uphold what they did---trying to protect the lawyers--- Tables 1, 2 and 3 show these lawyers falsifying evidence, concealing evidence to prevail in litigation.

Based on this experience before this court in CIV 13-0615; CIV 15-0140 and CIV 16-0282 Plaintiff researched this courts practice. Plaintiff found that when litigants are before this court with a lawyer,  this court applied liberal standards. However when litigants are before this court without a lawyer, this court applied heightened pleadings standards, protecting the litigant with the lawyer. [3]

---

[2] While appellate review is always available, the fact that this court forces appellate review by its actions, denies timely access to the courts.

[3]  Karban v Ryan; Largasgard v Corizon; Allan v Ryan; Horton v Ryan are just a few such cases where this court has done just that.

The principle that pleadings should  not be asked to do the work of discovery or a decision on the merits was reinforced by the Court's decision in *Conley v. Gibson* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court went further to reject the contention that a complaint should "set forth specific facts to support its general allegations," stating "the decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Michael E. Smith, *Judge Charles E. Clark and the Federal Rules of Civil Procedure,* 85 YALE L. J. 914, 927 (1976) (discussing Clark's views on pleadings in his academic writings and judicial opinions).  Rather, "all the Rules require is a „short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Similarly, in reviewing the sufficiency of the factual allegations considered in a complaint, the Court would not test them against its own experience, but presume them to be true. *See, e.g.,* Gardner v. Toilet Goods Ass"n, 387 U.S. 167, 172 (1967). Where allegations were too ambiguous to allow a coherent response, defendants were to avail themselves of a motion for a more definite statement. *Conley,* in short, may have accurately reflected the conceptual foundations of the adoption of the Rules.

(See Table 4)

Had Plaintiff being represented by counsel this court would not have applied the heightened pleadings standard it did  when it decided doc 64.

## DUE PROCESS MANDATES RECUSAL DUE TO
## JUDICIAL BIAS IN FAVOR OF LAWYERS
## AND AGAINST PRO PER LITIGANTS

In re Murchison 349 U.S. 136, 139 (1955) holds due process requires no actual or apparent bias and a decision obtained by a biased tribunal is based under the due process clause. When the decision of this court in document 64 on Fraud upon the Court is read in conjunction with the evidence in Tables 1, 2 and 3 it is clear that this court favors litigants represented by lawyers. Likewise the decisions in footnote 2 and CIV 13-0615; CIV 15-0140 coupled with this court applying the heightened pleadings standards shows a violation of the due process clause.

In addition to the federal statutes and the state judicial codes, the Constitution's Due Process Clause guarantees litigants a right to have their cases heard and decided by fair and impartial judges.[4] The Supreme Court has held that a biased judge violates the litigant's constitutional rights, requiring either a new trial or a new hearing on appeal without the tainted judge's presence.[5] These holdings, however, are exceptions rather than the rule, and it has long been thought that the Constitution mandates disqualification in only very limited circumstances. The Supreme Court has explained that "matters of personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion" rather than a constitutional recusal floor.[6] For decades, it was thought that recusal was mandated under the Due Process Clause in only two circumstances: (1) when the judge has a financial interest in one of the parties; or (2) when the judge presides over a criminal contempt hearing after presiding over an earlier hearing in which the contemptuous behavior took place. But in Caperton, the Supreme Court held that recusal is also mandated when the judge's relationship with

---

[4] . U.S. CONST. amends. V, XIV.

[5] . In re Murchison, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process.").

[6] . Tumey v. Ohio, 273 U.S. 510, 523 (1927) (citing Wheeling v. Black, 25 W. Va. 266, 270 (1884)).

one of the litigants creates a probability of bias.[7] Although Caperton involved a judge who decided a case involving a supporter of the judge's election bid, the holding of the case does not appear to be limited to the electoral context.[8]

## THE LAW ON RECUSAL

## THIS COURT'S ACTION FITS THE DEFINITION OF PARTIALITY

The Oxford English Dictionary defines "impartial" as "[n]ot partial; not favouring one party or side more than another; unprejudiced, unbiased, fair, just, equitable."[9] Conversely, "partial" is defined as "unduly favouring one party or side in a suit or controversy, or one set or class of persons rather than another; prejudiced; biased; interested; unfair."[10] "Bias," in turn, is defined as "[a]n inclination, leaning tendency, bent; a preponderating disposition or propensity; predisposition towards; predilection; prejudice."[11] Finally, the Oxford English Dictionary defines "prejudice" as a "[p]reconceived opinion; bias or leaning favourable or unfavourable; prepossession . . . an instance of this; a feeling, favourable or unfavourable, towards any person or thing, prior to or not based on actual experience; bias, partiality,"[12] and Webster's Third New International Dictionary elaborates that it is "an opinion or leaning adverse to anything [formed] without just grounds or before sufficient knowledge."[13] As is shown below this court's action fits this definition.

---

[7] . Caperton v. A. T. Massey Coal Co., 129 S. Ct. 2252 (2009).

[8] . See id. at 2257, 2267.

[9] OXFORD ENGLISH DICTIONARY 700 (2d ed. 1989).

[10] Id. at 265.

[11] Id. at 166.

[12] Id. at 356–57.

[13] 2 WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1788 (16th ed. 1971).

CONSOLIDATED MOTION TO DISQUALIFY PURSUANT TO 28 U.S.C. 144 & 455; TO VACATE PURSUANT TO RULE 60(b)(1)(2); TO WAIVE  LRCIV. 3.4(a); TO AMEND Lira v Herrera, 427 F.3d 1164, 1169 (9th Cir. 2005); MOTION TO EXCEED PAGE LIMITS. DECLARATION;    Page | 7

## WHEN LAWYERS ARE INVOLVED THIS COURT REFUSES
## TO APPLY COMMON SENSE AND JUDICIAL COGNITION
## IN PRO PER LITIGATION

The actions of this court show   deference to lawyers . Kylie Burns   in Judges, 'common sense' and judicial cognition  Griffith Law Review  Vol. 25, NO. 3 319-351 (2016) Judges are like other human beings. They use their 'common sense', their 'common understanding', their contemporary knowledge of society and the expectations of the community, as part of judicial decision-making. They apply their understandings of human behaviour   and their perception of how the world works to the disputes before them. The role of common sense and common understanding in judicial reasoning is well recognised, and the practice is 'centuries old'. Judicial common sense and experience have been described as the 'driving force of the common law'. Common sense is of course a deeply contested concept – there may be multiple competing versions of what constitutes common sense and it may differ from person to person, and from judge to judge.[14] Despite this, many legal principles require judicial application of forms of common knowledge  .

## THIS COURT'S ACTIONS SHOW PROTECTION OF LAWYERS

Benjamin H. Barton in DO JUDGES SYSTEMATICALLY FAVOR THE INTERESTS OF THE LEGAL PROFESSION? States in his article that many legal outcomes can be explained, and future cases predicted, by asking a very simple question: is there a plausible legal result in this case that will significantly affect the interests of the legal profession (positively or negatively)? If so, the case will be decided in the way that offers the best result for the legal profession. [15]

---

[14] Burns (2013), pp 83–85, 90–91.

[15] In a law review coming out late 2018 early 2019 Plaintiff extensively analyses the practice of Arizona federal and state courts allowing falsification of evidence by defendants. "REVIEW OF TREATISES SHOWING THE FAILURE OF ATTORNEY DISCIPLINE AND JUDICIAL PROCESSES WHEN GOVERNMENT LAWYERS AND PUBLIC FUNCTIONARY COUNSEL FALSIFY EVIDENCE

The actions by this judge show exactly just this. The court protects lawyers before the bench though Plaintiff presented evidence showing misconduct by these lawyers.

<u>**28 U.S.C. 144 and 455**</u>

As discussed below the action of this court violates 28 U.S.C. 144 and 455. Dmitry Bam, in Making Appearances Matter: Recusal and the Appearance of Bias, 2011 BYU L. Rev. 943 (2011). The American legal system is based on a simple and noncontroversial proposition: a fair and neutral judge is essential to the operation of a just legal system. This maxim was recognized throughout the history of legal institutions, and, in some respects, the academic scholarship on the judiciary, and the judicial role is about advancing fair, impartial, and independent judges. Disqualification of unfair and non neutral judges is just one method commonly used to ensure impartiality within the judiciary.[16] After all, judges are human and often develop personal and professional relationships that may hinder their ability to preside over a dispute in a fair and impartial manner.

Over the next two centuries, the federal recusal statute was amended and shaped. The federal statute that governs recusals by federal judges today is 28 U.S.C. § 455.[17] It is divided into two parts. Section 455(a) is a general catch-all provision that requires disqualification whenever a judge's "impartiality might reasonably be questioned."[18] This standard was intended to promote not only the impartiality of the judiciary but also the public

---

[16] . There are, of course, more draconian measures that can be used to remove biased or partial judges, including censure, reprimand, and impeachment. Often, these measures are reserved for judges who engage in blatant corruption or violate other ethical rules. *See, e.g.,* Ian Urbina & Sean D. Hamill, *Judges Plead Guilty in Scheme to Jail Youths for Profit,* N.Y. TIMES, Feb. 13, 2009, at A22, *available at* http://www.nytimes.com/2009/02/13/us/13judge.html?_r=1&adxnnl=1&adxnnlx=1300986369-

[17] This statute is a descendant of the original 1792 statute, which was altered in 1821 by the Act of Mar. 3, 1821, ch. 51, 3 Stat. 643; in 1891 by the Act of March 3, 1891, ch. 23, § 21, 36 Stat. 1090; then again in 1911 by the Act of Mar. 3, 1911, ch. 231, § 20, 36 Stat. 1087, 1090; and recodified as 28 U.S.C. § 455 in 1948.

[18] 28 U.S.C. § 455(a) (2006).

CONSOLIDATED MOTION TO DISQUALIFY PURSUANT TO 28 U.S.C. 144 & 455; TO VACATE PURSUANT TO RULE 60(b)(1)(2); TO WAIVE LRCIV. 3.4(a); TO AMEND Lira v Herrera, 427 F.3d 1164, 1169 (9th Cir. 2005); MOTION TO EXCEED PAGE LIMITS. DECLARATION;    Page | 7

perception of the impartiality of the judicial process.[19] No longer do we tolerate all non-financial bias by our judges. Instead, the statute is interpreted to proscribe even the appearance of bias, as viewed from the perspective of an objective observer.

This appearance-based standard has been in place since the statute was amended in 1974 and was intended to overrule the duty-to-sit doctrine, which suggested that close questions on disqualification issues should be resolved in favor of hearing the case. Section 455(a) has been described by the Court as a "catchall" provision, covering all kinds of bias and prejudice, and requiring an objective evaluation rather than the earlier subjective standard.[20]

Section 455(b), on the other hand, lists specific circumstances requiring disqualification.[21] Some consider the § 455(b) list as an a priori, per se determination of conditions that automatically satisfy the standard set forth in § 455(a), while others regard the list as a predetermined set of circumstances that involve actual bias rather than "the public perception of the judicial process."[22] Section 455(b) is implicated in cases involving allegations of personal bias or prejudice, create a conflict of interest. In other words, unlike § 455(a), which focuses on how a reasonable person would perceive the judicial conduct, § 455(b) addresses circumstances that are likely (in the

---

[19] H.R. REP. NO. 93-1453, at 5 (1974);*see also* S. REP. NO. 93-419, at 5 (1973); Liljeberg v. Health Serv. Acquisition Corp., 486 U.S. 847, 858 n.7 (1988) ("The general language of subsection (a) was designed to promote public confidence in the integrity of the judicial process by replacing the subjective 'in his opinion' standard with an objective test.").

[20] .Liteky v. United States, 510 U.S. 540, 548 (1994); *Liljeberg*, 486 U.S. at 870–71 (Rehnquist, C.J., dissenting).

[21] 28 U.S.C. § 455(b). Subsection 455(b)(1) requires a judge to recuse himself when he "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."*Id.* § 455(b)(1).

[22] . *Compare* Leslie W. Abramson, *Specifying Grounds for Judicial Disqualification in Federal Courts,* 72 NEB. L. REV. 1046, 1049–50 (1993) (arguing that § 455(b) particularizes the grounds for disqualification that satisfy the catch-all standard of § 455(a)),*with* Herrington v. County of Sonoma, 834 F.2d 1488, 1502 (9th Cir. 1987) ("Section 455(b) covers situations in which an actual conflict of interest exists, even if there is no appearance of one.") (emphasis omitted); *see also* Parker v. Connors Steel Co., 855 F.2d 1510, 1527 (11th Cir. 1988).

CONSOLIDATED MOTION TO DISQUALIFY PURSUANT TO 28 U.S.C. 144 & 455; TO VACATE PURSUANT TO RULE 60(b)(1)(2); TO WAIVE   LRCIV. 3.4(a); TO AMEND Lira v Herrera, 427 F.3d 1164, 1169 (9th Cir. 2005); MOTION TO EXCEED PAGE LIMITS. DECLARATION;   Page | 1⑤

eyes of the legislature) to create actual bias towards a party to the litigation. Despite numerous amendments, each broadening and expanding the disqualification standards, judges have always interpreted the statute narrowly.[23] This is partly because judges apply the law to themselves, and most judges hesitate to admit that they are so biased or so interested in a case as to be unable to render a fair, impartial decision. Research in cognitive psychology has recognized various biases that may affect judicial decision making on recusal, including unconscious bias and self serving bias.[24] In addition, the judge-created "duty to sit" doctrine encouraged judges to err on the side of remaining on a case even when there was a strong argument in favor of recusal.[25]

Judicial reluctance to acknowledge bias is only part of the reason why federal recusal statutes have had only limited success. Bias is a difficult concept to define. Generally, bias is defined as an "[i]nclination; prejudice, predilection; a preconceived opinion; a predisposition to decide a cause or an issue in a certain way, which does not leave the mind perfectly open to conviction."[26]

A second recusal statute, codified as 28 U.S.C. § 144, allows litigants to seek disqualification of a district court judge for any alleged bias or prejudice and establishes a broader recusal standard. Under this statute, judges have limited discretion about whether to  recuse ;  litigants need only file an affidavit alleging sufficient facts to infer a judge's prejudice.[27] Once such an affidavit is filed, the facts contained in the affidavit are presumptively valid, and a judge is automatically disqualified from the case.  In  Berger v. United States, the Supreme Court

---

[23] . Amanda Frost, *Keeping Up Appearances A Process-Oriented Approach to Judicial   Recusal*. 53 U. KAN. L. REV. 531, 540–41 (2005).

[24] . Deana A. Pollard, *Unconscious Bias and Self-Critical Analysis The Case for a Qualified Evidentiary Equal Employment Opportunity Privilege*, 74 WASH. L. REV. 913 (1999) (discussing unconscious bias); *see also* Robert A. Prentice, *The Case of the Irrational Auditor A Behavioral   Insight into Securities Fraud Litigation*, 95 NW. U. L. REV. 133, 143–80 (2000) (discussing self serving bias).

[25]  Laird  v. Tatum, 409 U.S. 824, 837 (1972)  (emphasis omitted).

[26] . BLACK'S LAW DICTIONARY 171 (9th ed. 2009).

[27] . Berger v. United States, 255 U.S. 22 (1921).

explained that this statute prohibits a judge from ruling on the truth of the allegations in a party's **affidavit**, requiring disqualification so long as the affidavit is facially sufficient.[28]

However, judges have adopted a narrow definition of prejudice and continue to review the **affidavit** to determine whether the litigants have satisfied the statutory requirements.[29] In other words, the very judge whose fairness is under review rules on the sufficiency of the affidavit. Professor Frank has explained:

> Frequent escape from the statute has been effected through narrow construction of the phrase "bias and prejudice." Affidavits are found not "legally sufficient" on the ground that the specific acts mentioned do not in fact indicate "bias and prejudice," a reasoning which emasculates the Berger decision by transferring the point of conflict.[30]

## THE ACTIONS BY THIS COURT AGAINST PLAINTFF
## AND PRO PER LITIGANTS MANDATE RECUSAL AS THEY SHOW BIAS AGAINST PRO PER
## LITIGANTS

As Plaintiff has shown this Court has in litigation involving pro per Plaintiff's shown bias and **prejudice** against them and has done exactly the same against Plaintiff. It has taken every affirmative action to ensure that Plaintiff and pro per litigants have no meaningful access to the courts. Though in theory this court has stated it applies liberal standards and treats all litigants the same, in fact, the record shows otherwise.

---

[28] . 255 U.S. at 36.

[29] . *See* Debra Lyn Bassett, *Judicial Disqualification in the Federal Courts*, 87 IOWA L. REV. 1213, 1224 (2002).

[30] Countervailing a judge's duty to recuse was a judicially created "duty to sit," first articulated by the Fifth Circuit. Edwards v. United States, 334 F.2d 360, 362 n.2 (5th Cir. 1964). That court explained that "[i]t is a judge's duty to refuse to sit when he is disqualified but it is equally his duty to sit when there is no valid reason for recusation."*Id.* The "duty to sit" provided the ammunition for judges to err on the side of nonrecusal, even when recusal was arguably justified. Although the duty to sit doctrine was eventually accepted by all circuits, *see* Laird v. Tatum, 409 U.S. 824, 837 (1972), the duty to sit has now largely been rejected.

**THE COURT SHOULD VACATE DOCUMENT 64**

**AND ALLOW PLAINTIFF LEAVE TO AMEND. DUE TO JUDICIAL BIAS**

**AND AS PLAINTIFF SATISFIES THE SURPRISE, EXCUSABLE NEGLECT AND**

**NEWLY DISCOVERED PROVISIONS OF RULE 60(b))(1)(2)**

Plaintiff should be granted leave to amend for the Ninth Circuit in Lira v Herrera, 427 F.3d 1164, 1169 (9th Cir. 2005) has stated leave to amend should be granted if a complaint has been dismissed for failure to state a claim. As the complaint is substantially in compliance with the court approved form, the provisions of L.R.Civ. 3.4(a) authorizes this court to waive us of the form. He has satisfied the surprise, excusable neglect and newly discovered evidence provisions of Rule 60(b)(1)(2).

## CONCLUSION

Plaintiff asks this court to recuse itself, vacate document 64 and grant him leave to amend for these reasons, waiving the provisions of LRCIV 3.4(a) as the amended complaint is in substantial compliance with the rules of this court.

Date:                                    Respectfully submitted,

ANANT KUMAR TRIPATI

## DECLARATION

I, Anant Kumar Tripati declare under penalty of perjury the following facts are true and correct and I am competent to so testify:

1. I am the Plaintiff in this matter and I believe, based on my research and experience with this court, that this court has a predisposition against pro per litigants.

2. Specifically, my experience with this court and my review of cases in which inmates are Plaintiffs has shown that this court, bends backwards for litigants when they have counsel. My experience and

research has shown that this court, allows lawyers, such as lawyers for Corizon and ADOC to conceal and not disclose evidence to prevail. I enclose Tables 1 through 3 which shows these lawyers and defendants have a systemic problem of concealing evidence to prevail in litigation and as they are lawyers this court looks the other way.

3. My research indicates that this court just as in this case, applies heightened pleadings standards to pro se litigants such as me and liberal standards to litigants with counsel.

4. I ask that this court disqualify itself make this request in good faith, after reasonable inquiry, not for any improper purpose.

5. I was surprised when I reviewed document 64 and conducted research on the method this court uses. Specifically I was surprised to find this court favoring litigants with counsel. As I have no access to a law library in prison and these facts were not disclosed earlier I was unable to learn of this earlier.

I declare under penalty of perjury that the above is true and correct.

Dated:

ANANT KUMAR TRIPATI

ANANT KUMAR TRIPATI 102081
POST OFFICE BOX 5000
FLORENCE,  ARIZONA 85132

Plaintiff Pro Per

IN THE UNITED STATES DISTRICT CINMATEST

FOR THE DISTRICT OF ARIZONA

ANANT KUMAR TRIPATI,                                      CV 16- 282 DCB

      Plaintiff,

Vs.

CORIZON INC; DR. CALVIN JOHNSON;WOODROW   MYERS;
HAROLD ORR;B. ANDERSON FLATT; TRACY NOLON;          FIFTH AMENDED
JONATHAN WALKER; KAREY WITT;SCOTT BOWERS;           VERIFIED COMPLAINT
BECKEN PETTY O'KEEFE & COMPANY;LUCY LYONS;
DR. WINFRED WILLIAMS;DR. LUCY  BURCIAGA;
DR. CHRISTOPHER JOHNSON' CHRISTINA   ARMENTA;
JOANNAHGRAFTON-BURNS; TAMARA  PORTER;
ANGELA MARTINEZ; MARLENE BEDOYA;   JULIA ERWIN
; PANNAN DAYS;JULIETTE  RESPICIO-MORIARTY; DEBRA
HAN; HEATHER RICHARDSON; TIMOTHY LAWRENCE;
CHERYL DOSSETT; ELIZABETH VALENCIA; DR. DAVID
ROBERTSON; STACY CRABTREE; ANNE MARIE
SMITH-WHITSON;GLEN PACHECHO; DARYL JOHNSON;
ANNA JACOBS; CHARLES RYAN; BETTY ULLIBARRI;
MARK BRNOVICH; SUSAN ROGERS; KARYN KLAUSNER;
KELLEY JOAN MORRISSEY; PAUL EDWARD CARTER,

      Defendants.

---

## JURISDICTION

1. This court has jurisdiction under 28 U.S.C. 1332 and 42 U.S.C. 1983. I am a British
   citizen and defendants of Arizona, Tennessee and Illinois. The amount in controversy
   exclusive of interest and costs exceeds $250,000. The events happened in the Lewis,
   Eyman, Florence, Douglas, Tucson complexes.

## **DEFENDANTS**

2. CORIZON INC; is the health care provider in ADOC.

3. DR. CALVIN JOHNSON;WOODROW   PLAINTIFF'SERS; HAROLD ORR;B. ANDERSON FLATT;TRACY NOLON; JONATHAN WALKER; KAREY WITT;SCOTT BOWERS; are policy makers Of Corizon Inc in Tennessee.

4. BECKEN PETTY O'KEEFE & COMPANY is the financial backer of Corizon without whom there would be no Corizon. Hereinafter BPOC

5. LUCY LYONS is a Corizon nurse; DR. LUCY  BURCIAGA a Corizon provider ; CHRISTINA  ARMENTA a Corizon provider;  TAMARA  PORTER a Corizon nurse; ANGELA MARTINEZ a Corizon nurse; in Tucson.

   DR. CHRISTOPHER JOHNSON   Corizon provider; JOANNAHGRAFTON-BURNS Corizon provider in East Unit.

6. DR. WINFRED WILLIAMS Corizon Regional  Director.

7. ANNE MARIE  SMITH-WHITSON Deputy Warden East Unit.

8. MARLENE BEDOYA registered nurse;  Debra han was CO IV    PANNAN DAYS Deputy Warden;  GLEN PACHECHO Deputy Warden; ANNA JACOBS Deputy Warden in Tucson.

9. JULIA ERWIN  Legal Monitor ADOC ;JULIETTE  RESPICIO-MORIARTY Medical appeals ADOC ; HEATHER RICHARDSON Appeals ADOC; TIMOTHY LAWRENCE Regional  Director ADOC ;  CHERYL DOSSETT Appeals ADOC ; ELIZABETH VALENCIA Appeals ADOC ; DR. DAVID ROBERTSON Medical manager ADOC ; STACY CRABTREE Classification Officer ADOC ; DARYL JOHNSON Legal Monitor

ADOC ; CHARLES RYAN Director ADOC ; SUSAN ROGERS Counsel ADOC; KARYN

KLAUSNER Counsel ADOC ;

10. BETTY ULLIBARRI paralegal ADOC

MARK BRNOVICH Attorney general;   KELLEY JOAN MORRISSEY Asst. AG ; PAUL

EDWARD CARTER Asst. AG. ,

## PREVIOUS LAWSUITS

11. I have filed more then three comlaints but as ADOC has lost Plaintiff's records I am

unable to provide the information.

12. Tripati v Johnson et al CIV 11-0195  in this cinmatest decided on summary judgment.

13. Tripati v Corizon CIV 13-0615 pending in this cinmateet.

14. Tripati v Hale CV 15-0140  appeal reinstated.

15. Tripati v Corizon CV 18-0061 pending.

## COUNT ONE VIOLATION OF EIGHTH AMENDMENT

## RELATES TO HEALTH CARE

## MEDICAL DIET

16. August 28th, 2014 the Chief Clinical Offifcer of Corizon after reviewing Plaintiff's medical

records determined that Plaintiff must be provided an allergy diet and that due to Plaintiff

being on prednisone Plaintiff   cannot be subjected to a RAST test. She ordered  Plaintiff

receive a diet free of soy, wheat, dairy, beans, nuts and gluten. The Medical Director of

ADOC approved that diet.She also found there was no medical necessity for Plaintiff to

eat meat and so the diet can comply with Plaintiff's religious tenets.

17. Martinez, Porter, Lyons, Bedoya, Burciaga by e.mails  directed Plaintiff not be given that

diet though they had the    duty to follow the order. Moriarity, Dossett, Valencia and

Robertson directed that Plaintiff not be given the diet. They upheld the actions denying the diet that Martinez, Porter, Lyons, Bedoya, Burciaga ordered.

18. DAYS , PACHECHO , JACOBS as duly athorized administrators directed that Plaintiff not be given that diet. When Plaintiff eats food with so, wheat, dairy, beans, nuts and gluten, Plaintiff throwsup, Plaintiff's blood sugar and blood pressure drops and he has other medical emergencies.

19. Upon the request of Erwin, Johnson, Carter, Klausner Williams after being aware that Plaintiff was on prednisone directed Plaintiff be given a RAST test though the healthcare provider in no uncertain terms advised them that the tests wold be invalid. They then took that test results, knowing it to be false, and used that as evidence to prevail in CIV11-0195.

## **MEDICATION**

20. Plaintiff has  been diagnosed by Corizon and ADOC to have shakes, tremors, high blood pressure, low blood pressure, allergies to food, chronic pain, chronic constipation, problems urinating etc. ADOC adjusted Plaintiff 's medication in March 2012 and they helped. However until August 28, 2014 Plaintiff  was denied the treatment that helped.

21. August 28, 2014 the Chief Clinical Officer of Corizon adjusted Plaintiff's   meds ordered Plaintiff be  given meds   every eight inmates. Plaintiff's blood pressure was monitored every eight inmates. As Plaintiff   has been falling down with inmates and security staff having to help Plaintiff  and as Plaintiff  is  having memory loss issues, Plaintiff  was admitted as an inpatient by NP Catalina Daye.

22. Dr. McQueen  ordered Plaintiff  receive 900mg of Gabapentin every 8 inmates, plavix, prednisone, doxazosin, finnasteride, zyrtec, prilosec, aspirin, blood pressure meds, senna, lovastatin. Plaintiff  received these until April 21, 2016 and it helped.

23. Han refused to file Plaintiff's  'grievance in April 2016 so when Plaintiff  submitted a complaint to CO III Mindiola, Dossett ordered her to file the grievance. Phone conversations, emails and attachments to emails that were sent and received by them in April 2016 show that Han spoke to Dossett, Erwin, Crabtree, Days, Pacheco, Burciaga, Armenta, Martinez and Porter and aware that East Unit medical is not open 24 inmates, hence, is unable to take care of Plaintiff  's medical needs, had Plaintiff  discharged for non-medical reasons and as retaliation for filing grievances above and moved to East Unit.

24. Defendants had Plaintiff  moved and prevented Plaintiff  from receiving the continuity of treatment Plaintiff  received and as ordered by the Chief Clinical Officer of Corizon, which helped a little bit. They did this because of Plaintiff 's grievances against Han and Corizon not giving Plaintiff  effective care.

25. Plaintiff saw an attachment to a April 26th, 2016 e.mail by Erwin to Brennan, Whitson and others. That attachment was prepared originally by Daryl Johnson and sent between 2006 to date by Daryl Johnson, Klausner, Rogers, Erwin, Dossett to defendants. That attachment states that Plaintiff  has published various articles on ADOC and that employees should do all that they can to restrain Plaintiff. That attachment invited employees to retliate against Plaintiff. Because of defendants knowledge of this and knowledge that Plaintiff had published information adverse to ADOC document they retaliated against Plaintiff.

26. East Unit dispenses the 24 inmates dosage of medication in an 8 to 9 inmates time frame. As Plaintiff has never done drugs or drank, the 24 inmates dosage in an 8 to 9 inmates period does not help manage the condition. It makes Plaintiff high and when the effect wears off, the condition starts getting worse.

27. Grafton and Johnson refused to give Plaintiff medication every 8 hoours and hence Plaintiff has had to refuse all medication and treatment. They instead changed to frequency for non-medicl reasons. Plaintiff has since April 22, 2016 fallen down on an average three to finmates times each week with inmates bring Plaintiff back to his housing area. All day Plaintiff is on his bed doing nothing. These were ordered by the Chief Clinical Officer of Corizon on August 28, 2014 and they were 900mg of Gabapentin every 8 inmates, plavix, prednisone, doxazosin, finnasteride, zyrtec, prilosec, aspirin, blood pressure meds, senna, lovastatin. Plaintiff received these until April 21, 2016 and it helped.

28. After Plaintiff signed 38 refusals upon the directives of Smith-Whitson Plaintiff was disciplined for refusing to take medication. Plaintiff 's refusals were very clear in that Plaintiff stated Plaintiff is not taking the medication and treatment because the manner in which the meds are given in East Unit does not help but aggravates Plaintiff 's condition.

29. Williams, Chris Johnson, Grafton, Smith-Whitson, Respicio-Moriarity, Dossett, Richardson, Crabtree, Valencia, Robertson, and each of them refused to give Plaintiff meds every 8 inmates or move Plaintiff to a facility where Plaintiff could continue to receive meds every 8 inmates. Plaintiff's blood pressure is high, Plaintiff has problems

urinating, has constipation, shakes, tremors, blood sugar issues. They refuse to continue with the treatment Plaintiff received as approved and given until April 21, 2016.

30. Smith-Whitson ordered all special needs orders/property Plaintiff had be seized. DW Shuman when Smith-Whitson left gave them back to Plaintiff .

## SPECIALISTS

31. Plaintiff has since August 28, 2014 been complaining that he needs to be seen by specialists for his urology, neurology, pain, shakes, tremors, allergies and memory issues.

32. Defendants waited until late 2015 before they began sending Plaintiff to specialists. This delay has aggravated Plaintiff 's medical conditions. Plaintiff 's shakes and tremors increased, Plaintiff has a lot of difficulty and pain urinating, his constipation worsened, his blood pressure and sugar drop and rise with frequency.

## REFUSAL

33. Plaintiff signed a two page refusal May 2016 and that refusal is very clear in that Plaintiff has in plain language stated as Corizon is not giving Plaintiff treatment that is being effective Plaintiff is refusing the testament. No reading of that refusal shows Plaintiff voluntarily refused, but, was being forced by the manner of the treatment, in refusing.

## UNAVAILABLE REMEDIES

34. Though Dossett, Porter, Lyons, Smith-Whitson, Pachecho, Bedoya, Days, Jacobs, Han, Erwin, Respicio-Moriarity, Richardson, Valencia, Robertson, have apparent authority to grant Plaintiff relief, acting pursuant to Ryan's policy to deprive inmates of their eighth amendment rights, they have refused to exercise that authority, and upon the acquiesce of Carter.

## RETALIATORY IMPEDIMENT

35. ADOC does not provide inmates with medical resources. Plaintiff  contacted Erwin as she has the authority to ensure inmates have those resinmatesces they need to pursue their claims effectively and meaningfully. She refused to allow Plaintiff  to receive a Pill Book, Encyclopedia and PDR, though she knew that Plaintiff   needed these to meaningfully pursue his claims. Due to Plaintiff   filing grievances and challenging defendant's actions, Erwin ordered Plaintiff   not receive these. But for these filings/challenges she would not have. Plaintiff  recently has been told he has BREATHING ISSUES  COPD/ASTHMA OR BRONCHIAL PROBLEMS   from second hand smoke. Had Plaintiff had these books Plaintiff would have known that Plaintiff's barrel chest, high blood pressure, pursing of lips to exhale are all very likely the result of BREATHING ISSUES SUCH AS  COPD/ASTHMA OR BRONCHIAL PROBLEMS  .

## DELIBERATE INDIFFERENCE

36. Defendants have acted with deliberate indifference to Plaintiff  's diagnosed serious medical needs, acting in accordance with Corizon and Ryan's customs, traditions, policies, inflicting upon Plaintiff unwanted pain and suffering.

37. Had BPOC not provided Corizon financial support after it knew or should have known that Corizon and its principals have had a history of delaying/denying treatment to inmates for their serious medical neeeds, none of the conduct would exist.

38. Had Ryan after becoming privy through reports, audits of Corizon that in Arizona Corizon was delaying/denying treatment to inmates for their serious medical needs, not given Corizon a $3,000,000 plus bonus and had he not reduced penalties, Corizon would not contnue with the conduct.

## INJURY

Plaintiff has had to continually suffer unbearable pain, have pain in his left side all the way to Plaintiff's head, fall down three to five times each week, cannot sleep, is constipated, cannot eat, has pain and problems urinating, has had to refuse treatment because by giving the 24 inmates dosage in 8 to 9 inmates, the medication is not effective to manage Plaintiff 's condition. No reading of the refusal shows Plaintiff voluntarily refused treatment but was forced to refuse treatment as the treatment as administered in East Unit did not help. .

## ADMINISTRATIVE REMEDIES

Plaintiff exhausted administrative remedies by submitting the appeal to the Director.

## COUNT TWO

## VIOLATION OF EIGHTH AMENDMENT This Count Relates To ETS

39. Plaintiff as been told recently Plaintiff has BREATHING ISSUES SUCH AS COPD/ASTHMA OR BRONCHIAL PROBLEMS and has been complaining about second hand smoke since 2000. Complaints and grievances by ADOC employees show that ADOC employees who enforce the policies have stated the ETS policy is not effective cannot be enforced and that many employees are getting ill and sick with second hand smoke.

40. Plaintiff has never smoked and has problems breathing due to second hand smoke.

41. Though Dossett, Richardson has apparent authority to give Plaintiff relief, by creating no-smoking units, they refuse to do so, because Ryan does not wish to lose the revenue

from tobacco sales. Brnovich by refusing to direct Ryan to make policy changes has caused the violations.

## INJURY

Plaintiff  is s being subjected to second hand smoke having breathing problems and defendants refuse to change their policies as defendants acted with deliberate indifference to his medical condition and have failed to protect him from second hand smoke.

## EXHAUSTION

Plaintiff exhausted remedies.

## COUNT  THREE

## VIOLATION RLUIPA This Count Relates To RELIGION

42. This count relates to the order issued August 28th, 2014 as to Plaintiff  's diet. Plaintiff is a Hindu since birth and eats no flesh. There is no medical necessity for Plaintiff  to eat meat. On August 28, 2014 Corizon issued an order that Plaintiff  's medical diet may be vegetarian as Plaintiff  is a Hindu. This could not be raised in CIV 11-0195  because the ordered was issued by Corizon on August 28, 2014.

43. Days, Jacobs, Robertson, Pachecho, Dossett, Richardson, Williams, Grafton,  Respicio-Moriarity, Chris Johnson aware that there is no medical necessity for Plaintiff  to eat meat refused to direct Plaintiff  be given  a vegetarian diet that comports to his  medical needs though Plaintiff  contacted them many times in writing after August 28, 2014..

44. Plaintiff   has no alternative means to exercise his  religious rights. There is no valid rational connection between the regulation that mandates Plaintiff  choose either to be a

Hindu or have his serious medical needs treated. There is no conflict in being a Hindu who has a serious medical need requiring a special diet.

45. Defendants are burdening Plaintiff 's religious exercise though there is no compelling government interest and this is not the least restrictive means.

46. Defendants have done so pursuant to Ryan's policy to prevent inmates from practicing their religious tenets. Emails, phone calls, attachments show that Carter has directed defendants not to accommodate Plaintiff 's medical and religious needs.

47. Brnovich refused to promulgate appropriate policies to ensure that his employees such as Carter not direct agencies to violate constitutional torts thereby causing Carter to have defendants violate the religious tenets of inmates not violate the Free Exercise, RLUIPA and First Amendment provisions.

48. Even though Days, Jacobs, Robertson, Pachecho, Dossett, Richardson, Williams, Grafton, Respicio-Moriarity, Chris Johnson have the authority to grant Plaintiff relief, they refused. Emails, attachments thereto, and phone calls show that Plaintiff is being denied the diet as retaliation.

### INJURY

Plaintiff is forbidden by Hinduism from eating meat and defendants refuse to accommodate his religious and medical needs. The vegetables are readily available and Jewish, Muslim inmates readily get the vegetables.

### EXHAUSTION

Plaintiff exhausted remedies.

### COUNT FOUR

### VIOLATION RETALIATION This Count Relates To RETALIATION

49. For the first time in April 2016 Plaintiff saw a memo that was written by Daryl Johnson and sent to ADOC employees including defendants since 2000. That memo asks empoloyees to realate against Plaintiff and do all that is needed as Plaintiff has been publishing articles and Plaintiff's family and friends have been complaining about Plaintiff's treatment to legislatures.

50. The conduct of ADOC has been continuous and hence pursuant to Page v United States, 729 F.2d 81, 821 and n 21 (D.C. Cir. 1984) Selby v Caruso, No 13-1248 (6th Cir. 10/31/13) this court has jurisdiction and this is timely. These events arose in 2000 and are continuing. The attachment to the April 26, 2016 Erwin email which Plaintiff saw for the first time in July 2016, confirm a September 2008 Johnson memo that evidence be destroyed and Plaintiff be RETALIATED against.

## EDUCATION

51. ADOC charges inmates a programs fee and that fee is mandatory. However after charging the fee the state does not allow inmates who are not US citizens, such as Plaintiff from particiating in education programs, even if they pay for the cost of these programs.

52. Plaintiff has been approved and completed his LLM from London and February 23, 2015 Days approved Plaintiff to complete his PhD. Emails with attachments from Han to Lawrence sent January 12, 2016 at 1242 show they asked Lawrence to overturn that approval at the request of Erwin and Lawrence did so. This is because the nature of the research speaks badly of ADOC.

53. June 2016 Lawrence in his capacity as Regional Director advised Plaintiff that as Plaintiff is not a U.S. Citizen Plaintiff will not be allowed to partake in the program.

54. So the reason that Plaintiff is not a citizen that is why Lawrence was overturning the prior approvals was a bogus reason. His motivating factor in not allowing Plaintiff to complete the program is the grievances, the content of the research showing the internal workings of the ADOC and Arizona Attorney General's Office and his knowledge of the attachment to the Erwin e.mail of April 26, 2016.

55. Dossett and Richardson though they have the apparent authority to, refused to exercise that authority and afford Plaintiff the relief.

56. Plaintiff as an inmate in the custody of ADOC has the right to partake in all programs to the same extent that other inmates do. There is no rational basis for refusing to deny Plaintiff participation in educational programs when ADOC has Plaintiff in custody. No legitimate penal or correcional goal is served by denying me or any inmate participation in educaional programs.

### GRIEVANCE

57. When Han refused to file Plaintiff's grievance Dossett directed her to file it which she did on April 21, 2016. According to emails and phone calls Armenta for no medical reason discharged Plaintiff at the urging of Days and Han and moved Plaintiff to East Unit with knowledge that East Unit cannot accommodate Plaintiff 's medical needs. Crabtree aware of this approved the transfer. Dossett and Richardson refused to exercise their authority and place Plaintiff in a facility where Plaintiff can receive the treatment.

58. Defendants engaged in the conduct in this complaint as retaliation for Plaintiff using the grievance process, and with knowledge that Plaintiff has been critical of them and of the contents of the attachment to the Erwin e.mail of April 26, 2016 , that Plaintiff was using

the courts to obtain relief and for publishing his research, a portion of which was seized by orders of Erwin.

## RECORDS DESTROYED

59. For the first time in April 2016 after reading the attachment to the Erwin e.mail Plaintiff became privy to the fact that defendants intentonally and upon directives of Daryl Johnson, Carter, Klausner, Rogers, Morrissey destroyed documents and records. As this attachment was concealed Plaintiff had no way of knowing about this. About 3,000 pages of original records from four locations which were evidence against ADOC defendants disappeared. These records were reconstructed by the Deputy Warden pursuant to his authority to resolve grievances. As these records exposed ADOC defendants to liability, as special policy makers, Rogers, Klausner, Daryl Johnson, Carter, Morrissey, Dosssett, Ryan, in violation of their own policies, directed by special policy, that the reconstructed records are not to be considered.

## LEGAL ACCESS

60. In violation of DO 902.05; 902.06.1.1; 902.09.1.2; 902.111.4.4 Carter, Klausner, Morrissey, Pachecho, Smith-Whitson, Daryl Johnson, Dossett, Jacobs, Ryan, Erwin, Ullibarri made a special legal access policy, that conflicts with ADOC Policy DO 902. Pursuant to that policy they directed Plaintiff be singled out and not afforded the privileges offered to all inmates by DO 902. Plaintiff is the only inmate in ADOC who is not authorized to make legal copies, send legal mail, and receive legal supplies in accordance with ADOC Policy DO 902. Ullibarri pursuant to the policy refused to send legal mail, give Plaintiff legal supplies and make legal copies as authorized by DO 902.05; 902.06.1.1; 902.09.1.2; 902.111.4.4

## FORGERY

61. Martinez forged a refusal plaintiff had signed and Porter, Lyons, Burciaga, Pachecho, Days, Ryan, Jacobs, Lyons, Ryan pursuant to Corizon and Ryan's policies upheld that forgery. This document was falsified so that it may be used as evidence to defeat litigation. Specifically she forged the refusal stating Plaintiff refused the diet when the truth of the matter is Plaintiff did not. The refusal was to be used as evidence in CIV 13-061 by Corizon.

## RETALIATORY DISCIPLINE

62. Plaintiff did not know that this was retaliatory until Plaintiff for the first time in April 2016 saw the attachment to the Erwin e.mail described in this complaint. Plaintiff was disciplined February 2010 through May 2016 on at least 9 times in retaliation for filing grievances and Plaintiff's litigation activities, for having a TV that was replaced by ADOC, for having a headphone his family sent Plaintiff .After being found guilty these items were given back to Plaintiff. . A series of manufactured retaliatory tickets were written against Plaintiff. Dossett and Klausner upheld these.

## RETALIATORY TRANSFERS

63. Plaintiff did not know that this was retaliatory until I for the first time in April 2016 saw the attachment to the Erwin e.mail described in this complaint. For filing grievances and litigation activities Plaintiff was transferred from Barchey to Barchman, to Barchey, to Cook, to Meadows, to Mohave, to Cimarron, to Santa Rita, to Cimarron, to Santa Rita, to Manzanita, to Rincon, to Manzanita, to Santa Rita, to Manzanita, to East Unit in 17 years. This just does not happen. Crabtree, Dossett, Ryan, Jacobs, Pachecho,

Richardson, Days, Smith-Whitson, pursuant to ADOC Policies to transfer inmates who use the grievance and litigation processes, approved these transfers.

## LOSS OF PROPERTY

64. Plaintiff did not know that this was retaliatory until Plaintiff for the first time in April 2016 saw the attachment to the Erwin e.mail described in this complaint.  Plaintiff 's property and legal materials have been lost or destroyed at least 16 times and Plaintiff prevailed in grievances at least 12 times. At the urging of Carter and Morrissey Plaintiff was refused just compensation. DOSSETT, ADOC Legal Services and ADOC replace lost legal materials. Recently they replaced the materials for Reed # 108264. They however singled Plaintiff out and refused to replace Plaintiff's materials, though Like Reed, in Plaintiff's  case, the grievance staff asked for reimbursement and stated ADOC employees lost/destroyed these. .

## REASONS FOR THESE ACTIONS

65. These actions were taken to chill Plaintiff exercising the right to use the grievance process and access to courts and serve no legitimate penal and/or governmental goals. They did this pursuant to the prevailing ADOC practices approved by RYAN, to retaliate against inmates.

66. Plaintiff has had to and continues to in violation of prison rules have other inmates make legal copies, get legal supplies and send out legal mail under their names. Plaintiff could be disciplined if caught. Otherwise Plaintiff  has no way of exercising Plaintiff's right of legal access.

67. This is atypical and substantial hardship in relation to ordinary incidents of prison life in 3 yards and no inmate is subjected to this in a 3 yard except me. This type of conduct does not happen in 3 yards.

68. Brnovich refused to promulgate appropriate policies to ensure that his employees such as Carter and Morrissey not direct agencies to violate constitutional torts thereby causing defendants to retaliate. Klausner, Erwin, Daryl Johnson, Dossett, Richardson, Jacobs, Pachecho, Smith-Whitson, Days have the apparent authority to prevent retaliation, but they refused to exercise that authority.

## INJURY

Plaintiff has been punished for exercising his right to access to courts and legal access.

## EXHAUSTION

Plaintiff exhausted remedies.

## COUNT FIVE

## FRAUD UPON THE CINMATEST This Count Relates To LEGAL ACCESS

69. When Plaintiff received the attachment to the Erwin e.mail in April 2016 and read its contents he was shocked that since 2000 ADOC, defendants Daryl Johnson and others have targeted him and asked employees to retaliate against him and destroy documents/evidence.   The conduct of ADOC has been continuous and hence pursuant to Page v United States, 729 F.2d 81, 821 and n 21 (D.C. Cir. 1984) Selby v Caruso, No 13-1248 (6th Cir. 10/31/13) this court has jurisdiction and this is timely. These events arose in 2000 and are continuing. The attachment to the April 26, 2016 Erwin email which Plaintiff saw for the first time in July 2016, confirm a September 2008 Johnson

memo that evidence be destroyed. Emails, attachments, phone calls recorded by ADOC show the following:.

## THE PRACTICE OF PERPETRATING FRAUD UPON THE COURTS ON ISSUES CENTRAL TO THE LITIGATION

70. Defendants and each of them as is shown below have the policy of practicing fraud upon the courts, on issues central to the litigation. In cases they are named as parties, they conceal and falsify evidence that "relate to matters in controversy in such a way as to interfere with the rightful decision of the case. There is a nexus between their actionable conduct and the merits of the case." Pursuant to this plan, scheme, practice of their, they engaged in the conduct against  Plaintiff, destroyed, concealed falsified evidence, so that the claims Plaintiff has are defeated and they prevail.

71. They intentionally and pursuant to their practice concealed and falsified evidence.

## WHEN DID PLAINTIFF LEARN OF THIS

72. Plaintiff discovered this after heread the attachment to the Erwin e.mail of April 26, 2016.

73. Carter and Morrissey wear two hats, one as an attorney and other as policymakers. In CV 11-0195 defendants concealed the fact Plaintiff  could not take RAST and argued Plaintiff must take RAST. Take these away they would not have prevailed. They knew these were materially false arguments but did so pursuant to their policy above to conceal/falsify evidence to prevail.

74. In CV 99-20757 Superior Court they concealed emails and documents showing there are too many complaints as to loss of property. They did this to show that post deprivation remedies are adequate. With the emails and documents Plaintiff could have shown the post deprivation remedies are inadequate they knew this to be materially

false. With this evidence the results would not be the same. They did so pursuant to their policy above. They did the same in CV 02-14210, CV 02-14211.

A.R.S. 31-201-01(L)

75. ADOC has no law libraries and paralegals are not allowed o conduct legislative history research on statutes. ADOC lost Plaintiff's property and legal materials Tripati v Arizona 199 ARIZ. 222 (2000), CV01-18741; 02-14210-02-14211; 02-15874 and Ryan, Carter, Morrissey misrepresented to the courts that ARS13-201.01(L) bars me relief. They knew or should have known this to be false because the statue does not apply to those whose crimes happened before April 2, 1994 and Plaintiff's crime happened in 1992.

76. Had they not made this material misrepresentations Plaintiff's sate tort remedies would not have been  foreclosed for me. Take away this material misrepresentation Plaintiff would have prevailed.

## AUTHORIZED PROCEDURE AND NO REMEDY

77. It is ADOC policy to destroy emails and documents which they know from their experience are potential evidence. There is no available post deprivation or administrative remedy in the ADOC available to Plaintiff, as applied to him  by way of special policies made by Carter, Klausner, Daryl Johnson, Erwin ,Ryan, Rogers, Robertson, Morrissey for Plaintiff ,  that conflicts with ADOC written policies for all inmates.

78. Intentionally acting pursuant to authorized established, Dossett, Respicio-Moriarity, Smith-Whitson, Jacobs, days, Pachecho, Robertson, Richardson, Valencia, Daryl Johnson, Erwin have refused to exercise their authority pursuant to ADOC policy to afford Plaintiff relief, which they have the duty and power to.

79. Plaintiff 's property and legal materials have been lost or destroyed at least 16 times and Plaintiff prevailed in grievances at least 12 times. At the urging of Carter and Morrissey Plaintiff was refused just compensation. The post deprivation remedies are inadequate, ineffective and unavailable for Plaintiff.

80. Defendants Morrissey, Klausner, Dossett, Respicio-Moriarity, Smith-Whitson, Jacobs, Days, Pacheco, Robertson, Richardson, Valencia, Daryl Johnson, Erwin, Rogers, Carter have concealed the number of complaints of property loss during litigation so as to prevail. They concealed emails, grievances, and other complaints. It is very common for them to falsify evidence and conceal evidence to prevail in litigation, as evident in above.

81. They have done this pursuant to ADOC authorized established procedures approved by Ryan.

82. Brnovich refused to promulgate appropriate policies to ensure that his employees such as Carter and Morrissey not direct agencies to violate constitutional torts thereby causing defendants to deny me adequate post deprivation remedies. Klausner, Erwin, Daryl Johnson, Dossett, Richardson, Jacobs, Pachecho, Smith-Whitson, Days have the apparent authority to prevent such denials, but they refused to exercise that authority.

## INJURY

Due to fraud by the other party to the suit Plaintiff, , the losing party did not know the evidence and was prevented from having a fair opportunity to present them upon the trial. Plaintiff's property has been repeatedly lost in retaliation and there are no available adequate post deprivation remedies. This is atypical and substantial hardship in relation to ordinary incidents of prison life in 3 yards and no inmate is subjected to this in a 3 yard except Plaintiff . This type of conduct does not happen in 3 yards.

## **EXHAUSTION**

Plaintiff exhausted remedies.

## **COUNT SIX**

## **VIOLATION OF SPOILATION TORT This Count Relates To LEGAL ACCESS**

83. Defendants and each of them having the duty to preserve and not destroy evidence, desroyed and failed to preserve evidence and did so intentionally with knowledge that the evidence was materia and relevant. ADOC records all employee phone calls and these are 801(d) (2) statements they destroy.ADOC and Corizon destroy all drafts and original electronic documents pursuant to DO 102, and Corizon's electronic records policies, and these are 801(d) (2) evidence.

84. Corizon and ADOC have pursuant to these policies destroyed evidence as to counts one through six. Emails, memos, reports as to the matters in this complaint have been destroyed. ADOC destroyed emails as to Plaintiff 's medical treatment failing to produce it in CIV 15-0140, CIV 11-0195, CV 99-20757,

85. Defendant Ryan as ADOC Policymaker and Johnson, Flatt, Nolan, Walker, , Witty, Orr, Bowers , policymakers of Corizon are aware that these are evidence, that their employee actions are frequently under litigation, that these records are frequently requested during litigation, are likely to be used in litigation .

86. Defendants' duty to preserve arises under the due process clause, their knowledge of prospective litigation and avoids liability for constitutional torts. Their conduct is intentional. There is reasonable probability the destroyed evidence would be adverse to them and favorable to the plaintiff, as evidenced by the non destroyed materials.

87. Flatt, Nolan, Walker, Plaintiff'sers, Witty, Orr, Bowers ,Ryan, Carter, Morrissey, Rogers, Klausner and Corizon aware that these 801(d)(2) evidence is regularly destroyed have intentionally refused to advise the cinmatests these evidence are routinely destroyed and to enjoin he practice.Brnovich refused to promulgate appropriate policies to ensure that evidence is not destroyed.

## INJURY

Evidence favorable to Plaintiff as to counts ONE TO FIVE has been destroyed.

## EXHAUSTION

Plaintiff exhausted remedies by appealing to the Director

## COUNT SEVEN

## VIOLATION OF FOURTEENTH AMENDMENT This Count Relates To Equal Protection

88. Defendants Corizon, Williams, Burciaga, Johnson, Grafton, Armenta, Martinez, Porter, Lyons, Smith-Whitson, Bedoya, Days, Jacobs, Han, Erwin, Respicio-Moriarity, Dossett, Richardson, Crabtree, Valencia, Robertson, Carter, , Morrissey, Rogers, Klausner , Ryan, Erwin, Daryl Johnson, Pachecho Johnson, Flatt, Nolan, Waker, , Witty, Orr, Bowers , and each of them in violation of Village Of Willowbrook v Olech, 528 U.S. 562, 564-65 (2000) Aliciea v Howell, 387 F. Supp. 2d 227 (W.D.NYK 2005) intentionally singled Plaintiff out causing Plaintiff to be denied the same or similar treatment, as all other inmates similarly situated and without any rational basis.

89. They singled Plaintiff out because they had knowledg through the attachment to the April 26, 2016 e.mail by Erwin sent originally by Daryl Johnson in 2000 that Plaintiff had challenged their conduct and was puboishing materials adverse to them; that Plaintiff filed grievances, challenged their actions and policies in courts, and publicized their

actions against Plaintiff.. They do not treat other inmates who engage in similar activities in the same manner. Carter directed defendants not to follow their own regulations when it involves Plaintiff and made special regulations. They directed them to engage in the constitutional torts in ths complaint paragraphs 1 to 100 .As stated above they singled Plaintiff out in matters relating to legal materials, religion, health care, education, and loss of property.

90. They concealed from the courts that Prednisone alters the immune system and prevents RAST, though the Chief Clinical Officer of Corizon advised them of this and the Arizona Medical Board initiated disciplinary proceedings against Williams.

91. They directed employees to act contrary to prison regulations causing constitutional torts in counts one to thirteen . It is ADOC policy to destroy emails and documents which they know from their experience are potential evidence.

92. Brnovich refused to promulgate appropriate policies to ensure that persons are not singled out.

93. They acted pursuant to ADOC and Corizon's policies to single out those who challenge them and their policies.

## INJURY

Plaintiff has been singled out as set forth in this complaint. . . This is atypical and substantial hardship in relation to ordinary incidents of prison life in 3 yards and no inmate is subjected to this in a 3 yard except Plaintiff.. This type of conduct does not happen in 3 yards.

## EXHAUSTION

Plaintiff exhausted remedies by appealing to the Director grievance

## PRAYER FOR RELIEF

Plaintiff demands a trial by jury, damages, costs, fees and an order that the practices complained of stop.

Declared    under    the    penalty    of    perjury    as    being    true    and    correct    on

_____

_____

ANANT KUMAR TRIPATI

PLAINTIFF PRO PER